ANN O'CONNOR, executrix,[1] vs. RAYMARK INDUSTRIES, INC.

Middlesex.    October 7, 1987. — January 25, 1988.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Practice, Civil,* Instructions to jury. *Proximate Cause. Negligence,* Manufacturer, Proximate cause. *Asbestos.*

At the trial of an action for personal injuries and wrongful death, there was no error prejudicial to the plaintiff in the judge's instructions relative to a special jury question whether the plaintiff's decedent had been exposed to the defendant's asbestos product, inasmuch as the jury answered the question in the affirmative. [590-591]

On the plaintiff's appeal in a personal injury and wrongful death action arising from her decedent's alleged exposure to asbestos, the judge's instructions did not erroneously require the jury to find that "but for" the decedent's exposure to the defendant's asbestos product he would not have contracted mesothelioma and died from it, but rather, read as a whole, the instructions cast the burden on the plaintiff to prove only that the defendant's product was a "substantial factor," tending to produce along with other factors, the decedent's disease and death. [591-592]

CIVIL ACTION commenced in the Superior Court Department on May 22, 1980.

The case was tried before *James P. Lynch, Jr.,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Albert P. Zabin* for the plaintiff.

*Leonard F. Zandrow, Jr.* (*Thomas P. O'Reilly, Richard L. Neumeier & Janet L. Maloof* with him) for the defendant.

O'CONNOR, J. Richard O'Connor and his wife, Ann, brought this action against numerous defendants to recover for personal injuries and loss of consortium allegedly due to Richard's exposure to asbestos. While the action was pending, Richard

---

[1] Of the estate of Richard O'Connor.

died from an asbestos-related disease called mesothelioma. Ann then amended the complaint to name herself, as executrix of Richard's estate, as plaintiff in his stead, and to include a claim for wrongful death. Before trial, Ann settled with sixteen of the defendants, leaving Raymark Industries, Inc., as the sole defendant.

The case was submitted to a jury on special questions, only the first two of which are important to this appeal. Question 1 was, "While employed by the Bethlehem Steel (Fore River) Shipyard, was Richard O'Connor exposed to asbestos contained in products manufactured by Raymark Industries, Inc. (Raybestos-Manhattan)?" Question 2, to be answered only in the event the jury were to answer question 1 "yes," was, "Did Mr. O'Connor's exposure to the asbestos contained in those Raybestos-Manhattan products cause, or did it substantially contribute to cause, mesothelioma in him, and did it cause his death?"

The jury answered "yes" to question 1 and "no" to question 2. Accordingly, judgment was entered for the defendant. The plaintiff appealed, and we granted her application for direct appellate review. The plaintiff assigns as error certain jury instructions relative to questions 1 and 2. We affirm the judgment.

There was evidence, controverted as to many issues, of the following facts. Richard O'Connor was a welder at the Fore River Shipyard in the 1940's. While welding, he would cover himself with asbestos blankets, manufactured by the defendant, for protection from sparks. The blankets gave off asbestos dust that O'Connor inhaled. O'Connor was exposed to numerous other asbestos products at the shipyard, as well. After he left his employment at the shipyard, O'Connor was employed by the town of Braintree. In the course of that employment, he worked directly with asbestos products resulting in his inhaling and being covered by asbestos dust.

One of the principal issues at trial was whether the particular type of asbestos contained in the defendant's blankets used by O'Connor could cause mesothelioma, the disease from which O'Connor died. The plaintiff's and the defendant's expert witnesses disagreed as to that issue.

We quote the judge's instructions to the jury in pertinent part: "Question 1: While employed by the shipyard, was Mr. O'Connor exposed to asbestos contained in products manufactured by Raybestos? . . . You have to determine whether Mr. O'Connor, while employed at the shipyard during either or both of those periods in the forties when he was there, was exposed to asbestos-containing products manufactured and distributed to that shipyard by Raybestos. . . . Now, there was some evidence that Mr. O'Connor was exposed to products of other manufacturers. Now those other manufacturers and those other products are not before you, and you're not to concern yourself with them. The only matters you have to decide on Question 1 is whether there was any Raybestos-Manhattan product at Fore River while Mr. O'Connor was a welder there. If so, whether that product contained asbestos; and, if so, whether Mr. O'Connor was exposed to the asbestos fiber contained in that product manufactured by Raybestos-Manhattan.

"Now the word 'exposed' requires just a comment. What does 'exposed' mean in this question? Well common sense will tell you, I think, that it's not enough for the plaintiff, Mrs. O'Connor, to prove only that there was a Raybestos-Manhattan asbestos-containing product at the shipyard while Mr. O'Connor was also at the shipyard. Mrs. O'Connor must prove more than just a casual or minimal contact at that point in time with the product, if it was there. You might say that if I'm in this courtroom, and there's an object down the other end, that I might be exposed to it if I walk through the courtroom. That's not the type of exposure, obviously, we're talking about. So mere proof that Mr. O'Connor and a Raybestos-Manhattan product were at the shipyard simultaneously without more doesn't prove exposure to that product. There must be evidence of some exposure, more than just casual or minimum exposure on a regular basis over some period of time where Mr. O'Connor was actually working with the product himself or in proximity to where others were working with the product.

"Now, exposure means breathing in or otherwise ingesting or taking in asbestos fibers . . . . Now, Question 2 is still an exposure question: Did Mr. O'Connor's exposure to the asbes-

tos contained in those products — and this assumes, of course, you found that he was exposed to Raybestos-Manhattan products — did that exposure substantially contribute to cause mesothelioma in him, and did it cause his death? So the linkage there is in the next factual question; it asks you to determine whether his exposure, which you would have found if you're on Question 2, contained in Raybestos-Manhattan product caused — that's one alternative, or whether it substantially contributed to cause — the mesothelioma and the death from that particular disease . . . .

"You see the two possibilities are direct cause — but it isn't necessary for the plaintiff to persuade you that the exposure actually caused it. It's enough if that exposure contributed to cause it in whole or in part, and the reason is very simple: Raymark is not responsible for Mr. O'Connor's disease and death unless its product was at least in part the cause of the disease and death. For you to answer 'yes' to Question Number 2, you have to find that the asbestos contained in this defendant's products was a substantial contributing cause of his illness and death. It doesn't have to be the only cause, but it has to be a substantial contributing cause . . . . It means something that makes a difference in the result. There can be and often are more than one cause present to produce an injury, and more than one person legally responsible for an injury or disease, so here, even if other manufacturers of asbestos-containing products were at fault, and their products contributed to Mr. O'Connor's disease, Raymark, Raybestos-Manhattan, is not thereby relieved from liability if you should find . . . that its Raybestos products were . . . a substantial contributing factor to his disease and . . . death. So you look to see . . . how much asbestos he was exposed to, whether he inhaled or retained any fibers from the asbestos, consider the medical evidence, how mesothelioma and asbestos are related, consider the evidence as to the effects on the body of different types of asbestos fibers, and then determine whether Raybestos fibers, if you find he was exposed to them, did cause his mesothelioma or contribute substantially to that disease."

Immediately following the jury instructions, plaintiff's counsel stated an objection to the jury instructions, relative to question 1, dealing with the plaintiff's burden to prove O'Connor's "proximity" to the defendant's product. Then, turning to the instructions relative to question 2, counsel called to the judge's attention the judge's use of the term "substantial contributing cause," and his related instruction that "the plaintiff must show that the defendant's product must make a difference in the result." In support of his objection, counsel brought "the court's attention to the case of [*Payton* v. *Abbott Labs,* 780 F.2d 147 (1st Cir. 1985)], . . . where more than one factor combined to cause an injury and cannot be separated out, plaintiff does not have the burden of separating out . . . the relevant causal relation of each." The judge declined to give further jury instructions.

During deliberations, the jury asked the judge for clarification of the meaning of the words "substantially contribute to cause." The judge's reinstruction on that subject was nearly identical to his earlier instruction. There was no objection at that point.

On appeal, the plaintiff argues that the judge erred when he instructed the jury that, in order for them to find that O'Connor had had sufficient exposure to the defendant's product to warrant an affirmative answer to question 1, the plaintiff had to prove that O'Connor had worked in proximity to the product on a regular basis. But even if, as the plaintiff asserts, the judge's instructions imposed an excessively heavy burden on the plaintiff to prove exposure, which we do not intimate, and confused the question of exposure with the question of causation, which we also do not suggest, the error was nonprejudicial because the jury answered "yes" to the question. Since we presume that the jury followed the judge's instructions, *Commonwealth* v. *Campbell,* 394 Mass. 77, 86 (1985), *Saragan* v. *Bousquet,* 322 Mass. 14, 20 (1947), *Krinsky* v. *Whitney,* 315 Mass. 661, 670 (1944), we conclude that the jury found that O'Connor had had more than minimal or casual contact with the defendant's product, that he was exposed to the product on a regular basis, and that he breathed in, or otherwise ingested

or took in, asbestos fibers from the defendant's product. Nothing in those findings prejudices the plaintiff.

The plaintiff's argument with respect to the instructions and reinstruction on question 2 focuses on the judge's statement that, for the plaintiff to recover, "[the defendant's product] doesn't have to be the only cause, but it has to be a substantial contributing cause . . . . It means something that makes a difference in the result." The thrust of the argument is that that instruction erroneously required the plaintiff to prove "but for" causation, that is, that but for O'Connor's exposure to the defendant's product, he would not have contracted mesothelioma and died from it. The plaintiff also argues that the instructions "required the plaintiff to apportion the injury, at least to the extent of separating out the effect of the defendant's product from the combined effect of all the asbestos dust which her late husband inhaled."

We assume in the plaintiff's favor that she adequately preserved her right to review the judge's instructions and reinstruction concerning question 2. Furthermore, we agree with the plaintiff that she would be entitled to a new trial if the judge's instructions, viewed as a whole, might reasonably have led the jury to understand that, in order to recover, the plaintiff had to prove "but for" causation, or that she had the burden of identifying the particular effect of the defendant's product, in a way that distinguished it from the effect of the other asbestos products to which O'Connor was exposed. We agree that the law imposes no such requirement. We have said before, and we repeat, "that if two or more wrongdoers negligently contribute to the personal injury of another by their several acts, which operate concurrently, so that in effect the damages suffered are rendered inseparable, they are jointly and severally liable." *Chase* v. *Roy,* 363 Mass. 402, 408 (1973). *Burke* v. *Hodge,* 217 Mass. 182, 184-185 (1914). See *Payton* v. *Abbott Labs,* 780 F.2d 147, 157 (1st Cir. 1985). Furthermore, as the plaintiff argues, a defendant's position is no better if the concurring acts of others were not negligent acts.

The plaintiff's argument on appeal fails not because we do not accept the law as set forth above, but because we are

satisfied that the judge's instructions did not stray from those principles. In our view, a jury could not reasonably have understood the judge's instructions concerning causation, read as a whole, to mean anything more than that the plaintiff had the burden of proving that the defendant's product contributed in fact to O'Connor's disease and death in a legally cognizable manner. Understood in that way, the instruction was correct. See *Bernier* v. *Boston Edison Co.,* 380 Mass. 372, 385-386 (1980); *Delicata* v. *Bourlesses,* 9 Mass. App. Ct. 713, 720 (1980). Although the question is close, we conclude that the judge's statement, "It means something that makes a difference in the result," did not render the charge erroneous. Read in context, the judge's statement served to distinguish between a "substantial factor," tending along with other factors to produce the plaintiff's disease and death, and a negligible factor, so slight or so tangential to the harm caused that, even when combined with other factors, it could not reasonably be said to have contributed to the result. See Restatement (Second) of Torts §§ 430, 431, 433, and comments (1965); W.L. Prosser & W.P. Keeton, Torts § 41, at 267-268 & nn.31-41 (5th ed. 1984). "The 'substantial factor' formulation is one concerning legal significance rather than factual quantum." *Id.* at 267. The jury instructions, read as a whole, were correct.

*Judgment affirmed.*