932 F.2d 37
 1991-1 Trade Cases 69,418
 REFUSE & ENVIRONMENTAL SYSTEMS, INC. and Richard V. Bisesti,
Plaintiffs, Appellees,
v.
INDUSTRIAL SERVICES OF AMERICA, INC. d/b/a Computerized
Waste Systems, Inc., et al., Defendants, Appellees,
Joseph Freedman, Defendant, Appellant.
 No. 90-1489.
 United States Court of Appeals,
First Circuit.
 Heard Feb. 8, 1991.
Decided April 29, 1991.
 
 Kimberly Homan with whom Zalkind, Sheketoff, Wilson, Homan, Rodriguez & Lunt, Boston, Mass., Eliot B. Gersten and Gersten & Clifford, Hartford, Conn., were on brief, for appellant.
 George F. Kelly with whom Ryan & White, Springfield, Mass., and John J. Pribish, New Brunswick, N.J., were on brief, for appellees.
 Before TORRUELLA, Circuit Judge, ALDRICH and BOWNES, Senior Circuit Judges.
 BOWNES, Senior Circuit Judge.
 
 
 1
 This is an appeal by defendant-appellant Joseph Freedman from adverse jury verdicts and court findings. 732 F.Supp. 1209. The roots of the case go back to 1975 when Freedman and two other individuals formed a company known as Waste Marketing Systems, Inc., a business which provided centralized, computerized waste management services for department store chains. Several years later the company was sold and renamed Computerized Waste Systems, Inc. ("CWS"). After the sale Freedman retained partial ownership of the company.
 
 
 2
 Richard V. Bisesti, one of the plaintiffs-appellees in this action, worked for the company from 1975 until 1985, when he and co-workers Linda Pearson and Jack Singletary formed their own waste management company, Refuse & Environmental Systems, Inc. ("R & E"), the other plaintiff-appellee. When CWS began losing clients to R & E, CWS officers Freedman, Harry Kletter, and Paul Burke decided to sue R & E, Bisesti, and Singletary. The complaint alleged breach of employment agreements involving trade secrets, breach of fiduciary duties, and unlawful inducement of breach of contract. The lawsuit had its intended effect. Potential clients who had learned of the suit decided not to do business with R & E.
 
 
 3
 R & E and Bisesti then sued CWS, Freedman, Kletter, Burke, and others in the United States District Court for the District of Massachusetts for slander, abuse of process, interference with prospective economic gain and contractual relations, federal antitrust violations, and violation of Massachusetts General Law chapter 93A, Sec. 2. The case proceeded to trial against CWS, Freedman, Kletter, and Burke, the other defendants having been dismissed. The district court assumed subject matter jurisdiction over the action pursuant to 28 U.S.C. Secs. 1331, 1337, and 15 U.S.C. Sec. 15 (antitrust), and pendent jurisdiction over the related state claims. See United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).
 
 
 4
 Burke was found not liable. The jury found CWS liable on the antitrust count and the count for interference with R & E's prospective economic gain and contractual relations. It found Kletter and Freedman each liable for slander and abuse of process. After the jury trial the court found Kletter and Freedman liable under the Massachusetts Consumer Protection Act, Mass.Gen.L. ch. 93A, Sec. 2. Plaintiffs were awarded attorney's fees and costs by the court pursuant to 15 U.S.C. Sec. 15 and Mass.Gen.L. ch. 93A, Sec. 11.
 
 
 5
 Freedman makes the following claims on appeal: the court erroneously denied his motion for directed verdict and motion for judgment notwithstanding the verdict as to the slander and abuse of process counts; the jury's award for slander was excessive; the damages awarded under Mass.Gen.L. ch. 93A, Sec. 11 were improperly cumulative and lacked evidentiary support; and the award of attorney's fees and costs was improper. Kletter has appealed separately; his appeal is not before us.
 
 I. Slander
 
 6
 In considering an appeal from the denial of motions for directed verdict and judgment n.o.v., we "view all the evidence in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor." Payton v. Abbott Labs, 780 F.2d 147, 156 (1st Cir.1985). Having done so, we find no evidence to support the slander verdict against Freedman. Witnesses testified that Kletter, but not Freedman, told R & E's business colleagues and potential customers that Bisesti was a crook and that a lawsuit was being filed against R & E. Nowhere in the record is there any evidence that Freedman personally made slanderous statements about Bisesti, nor did the plaintiffs try to prove the same. The most the record shows is that Freedman helped to coordinate the state lawsuit. Although we have found no cases directly on point, it seems beyond cavil that in order for a defendant to be found individually liable for slander, the defendant must have personally made a slanderous statement about the plaintiff.
 
 
 7
 The case was tried on two alternative theories of liability: individual, and joint and several. In arriving at its slander verdict, the jury answered a set of special interrogatories: It found Freedman liable for slander; it assessed damages against him individually in the amount of $100,000; it also found the non-appealing defendant Kletter liable and assessed damages against him individually in the amount of $100,000. It found defendants CWS and Burke not liable for slander. The jury explicitly found that none of the defendants were jointly and severally liable for slander. A copy of the interrogatories and the jury's answers thereto are in an appendix to this opinion.
 
 
 8
 The court instructed the jury that if they found joint and several liability on the various counts, damages should be assessed jointly and severally. The core of the instruction was as follows:
 
 
 9
 Where two or more persons unite in an act which constitutes a wrong to another, intending at the time to commit it, or performing it on the circumstances which fairly charge them with intending the consequences which follow, they incur a joint and severable [sic] liability for the acts of each and all of the joint participants.
 
 
 10
 The law does not require the injured party to establish how much of the injury was done by one person and how much of an injury was done by another. Rather, [it] permits the injured party to treat all concerned in the injury jointly, and all are liable to respond to the plaintiff in the total sum you find to be damages.
 
 
 11
 During deliberations, the jury asked the judge if the question on joint and several liability had to be answered if they found damages against CWS. The judge answered:
 
 
 12
 You only have to decide between joint and several or individual liability if you found that more than one defendant is liable in the first part of the question.... [Y]ou have to make a choice as to whether you wish to find damages against that particular individual defendant, or defendants, or joint and several liability, which means it's against all those that you find responsible for whatever the count may be.
 
 Both instructions were clear and correct.[1]
 
 13
 A basic premise of our jury system is that the jury follows the court's instructions. "We must assume that juries follow instructions." de Feliciano v. de Jesus, 873 F.2d 447, 451 (1st Cir.) (citing Aspen Skiing Co. v. Aspen Highlands Skiing Corp., 472 U.S. 585, 604, 105 S.Ct. 2847, 2858, 86 L.Ed.2d 467 (1985)), cert. denied, --- U.S. ----, 110 S.Ct. 148, 107 L.Ed.2d 107 (1989).
 
 
 14
 The trial judge upheld the verdict over the objection of defendant that it lacked any evidentiary foundation. He did so on the theory that Freedman had engaged in a common plan to slander Bisesti:
 
 
 15
 A jury could infer from this testimony that Freedman helped to coordinate the baseless state court lawsuit against Bisesti and R & E; that he was instrumental in furthering a scheme to defame Bisesti by instigating the lawsuit; that he could reasonably foresee or did in fact intend that false and harmful words regarding plaintiffs be communicated to the waste services business community via CWS agents and shareholders. In short, because Freedman could reasonably have been understood by the jury to have played a key role in a common plan to slander plaintiff, defendant's motion for judgment n.o.v. is denied.
 
 
 16
 This analysis can only mean that the judge thought Freedman was jointly and severally liable with Kletter. The evidence certainly could have been viewed as the judge stated. But the jury did not so view it; it found the defendant individually liable and not jointly and severally liable. The court could not re-write the jury's answers to the interrogatories because of the lack of evidence for a finding of individual liability.
 
 
 17
 The plaintiffs argue that the judge properly "harmonized" inconsistent answers to interrogatories to reach a logical conclusion. We are well aware that " '[w]here there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way.' " Gallick v. Baltimore & Ohio R.R. Co., 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618 (1963), quoting Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962). See also Insurance Co. of North America v. Musa, 785 F.2d 370, 377 (1st Cir.1986); Mashpee Tribe v. New Seabury Corp., 592 F.2d 575, 590 (1st Cir.), cert. denied, 444 U.S. 866, 100 S.Ct. 138, 62 L.Ed.2d 90 (1979). But here there were no inconsistent answers to be resolved. The answers were consistent with each other and with the finding of individual liability. The only "inconsistency" was between the $100,000 slander judgment against Freedman and the lack of evidence to support it. The remedy was either a directed verdict or a judgment notwithstanding the verdict.
 
 
 18
 The plaintiffs also contend that Freedman failed to preserve for appeal the trial court's rulings on the motions for directed verdict and judgment n.o.v. We disagree. A motion for directed verdict must state the "specific grounds therefor." Fed.R.Civ.P. 50(a). The motion must be made "with sufficient specificity to allow the district judge to understand precisely why the evidence is insufficient." Wells Real Estate, Inc. v. Greater Lowell Bd. of Realtors, 850 F.2d 803, 810 (1st Cir.), cert. denied, 488 U.S. 955, 109 S.Ct. 392, 102 L.Ed.2d 381 (1988). In their motion for directed verdict, the defendants stated:
 
 
 19
 The Plaintiff, Bisesti, has not established by a fair preponderance of the credible evidence facts that would warrant the jury to conclude the Plaintiff, Bisesti, was maliciously slandered by each of the said [ ] Defendants so that the Plaintiff's reputation was damaged. There was no credible evidence that Bisesti's reputation was other than exemplary.
 
 
 20
 Plaintiffs argue that because the motion did not challenge the concert of action allegation, the defendants may not challenge the sufficiency of the evidence for a finding of joint and several liability. This misses the point; the jury rejected the joint and several theory of liability. Although the motion could have been more sharply worded, it was specific enough for the judge to understand "precisely why the evidence [was] insufficient." Wells Real Estate, Inc. v. Greater Lowell Bd. of Realtors, 850 F.2d at 810.
 
 II. Abuse of Process
 
 21
 The jury awarded damages against Freedman individually in the amount of $3,000 for the abuse of process count. Freedman claims that the trial judge erroneously failed to grant his motion for judgment n.o.v. as to the abuse of process count. The elements of the tort of abuse of process in Massachusetts are: (1) that process is used (2) for an ulterior or illegitimate purpose, (3) resulting in damage to the plaintiff. Datacomm Interface, Inc. v. Computerworld, Inc., 396 Mass. 760, 489 N.E.2d 185, 195 (1986). The defendant argues that there is no evidence that he had an ulterior purpose when he participated in the suit against Bisesti, Singletary and R & E.
 
 
 22
 The evidence established that Freedman actively participated in the lawsuit against R & E which triggered the loss of potential clients for R & E. The jury could reasonably have inferred that Freedman knowingly and intentionally used a baseless lawsuit to attempt to drive R & E out of business. The district court properly denied the defendant's motions for directed verdict and judgment n.o.v. on the abuse of process count.
 
 III. Massachusetts General Law, Chapter 93A
 
 23
 After the jury delivered its verdict, the trial judge found that Kletter and Freedman had violated Massachusetts General Law chapter 93A, Sec. 2 by willfully filing the lawsuit against Bisesti and R & E.[2] The judge assessed Kletter and Freedman each $10,000 in damages and doubled the award pursuant to Sec. 11 of the statute. Freedman now claims that the 93A damages award lacked foundation in the evidence and was improperly cumulative.
 
 
 24
 The Massachusetts Consumer Protection Act was enacted to protect consumers and businesses from unfair competition and unfair or deceptive acts in the conduct of trade. Under the act, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Mass.Gen.Laws Ann. ch. 93A, Sec. 2(a) (West 1985). Private citizens may sue under Sec. 9 of the statute; corporations may sue under Sec. 11.[3]
 
 
 25
 Section 11 of the act provides, in pertinent part:
 
 
 26
 Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property ... as a result of ... an unfair method of competition or an unfair or deceptive act or practice ... may ... bring an action ... for damages and ... equitable relief....
 
 
 27
 A person may assert a claim under this section ... for money damages only. Said damages may include double or treble damages, attorneys' fees and costs....
 
 
 28
 If the court finds for the petitioner, recovery shall be in the amount of actual damages; or up to three, but not less than two, times such amount if the court finds that the use or employment of the method of competition or the act or practice was a willful or knowing violation of said section two....
 
 
 29
 If the court finds in any action commenced hereunder, that there has been a violation of section two, the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorneys' fees and costs incurred in said action.
 
 
 30
 Mass.Gen.Laws Ann. ch. 93A, Sec. 11 (West 1985).
 
 
 31
 Chapter 93A damages may not duplicate damages awarded on other grounds. In Calimlim v. Foreign Car Center, Inc., 392 Mass. 228, 467 N.E.2d 443 (1984), the plaintiffs showed that acts which constituted breaches of warranties also constituted a 93A violation. The court allowed the plaintiffs to collect damages for the 93A violation but disallowed breach of warranty damages, stating: "recovery of cumulative damages under multiple counts may not be allowed." Id. 467 N.E.2d at 448. The court also ruled that where the wrongful acts constituting the 93A violation are factually separable from acts complained of under common law, statute, or regulation, the plaintiff may recover separate awards. Id. The court concluded: "It is only where the same acts cause the same injury under more than one theory that duplicative damage recoveries will not be permitted." Id.
 
 
 32
 In the present case, the district court found defendants liable for a willful violation of 93A. Following the trial, the judge stated from the bench:
 
 
 33
 On the 93A claim ... the Court finds based on the evidence before him that the actions of defendants Kletter and Freedman in going forward with litigation in this case was ... willful. And therefore, the Court will add ten thousand dollars against each defendant on those respective counts.
 
 
 34
 In a post-trial memorandum and order, the judge doubled the 93A damages award to $20,000 against each defendant because the violation was willful. After reciting the rule against duplicative damages, the court stated:
 
 
 35
 The Court held that Kletter and Freedman had each caused $10,000.00 actual damages to the plaintiffs as a result of unfair and deceptive practices, and the defendants were held liable for that amount, in addition to the damages awarded by the jury....
 
 
 36
 In this case, the Court found a separate basis for chapter 93A violations. The Court found that the defendants, in bringing the state lawsuit in spite of the evidence, willfully committed an unfair and deceptive practice within the meaning of chapter 93A, Secs. 2 and 11. Chapter 93A offers a remedy to plaintiffs who have been forced to litigate claims that clearly lack merit.... Thus, the Court awarded actual damages in the sum of $20,000.00, payable in equal parts by defendants Freedman and Kletter. This amount must be doubled, and may be trebled if the Court in its discretion deems such an award appropriate.
 
 
 37
 Memorandum and Order at 7 (citations, footnote omitted).
 
 
 38
 We do not question the court's finding that by "bringing the state lawsuit in spite of the evidence" the defendants willfully committed an unfair and deceptive practice under 93A. We do not agree, however, that this act warranted a separate award under 93A. We think "bringing the state lawsuit in spite of the evidence" is the same as the abuse of process count, for which defendants Kletter and Freedman had already been assessed damages of $3,000 each. Both counts were based on the same facts.
 
 
 39
 The court did not explain the basis for its finding of $20,000 in damages ($10,000 against Freedman and $10,000 against Kletter). A 93A damages award must be based on monetary or property loss due to illegal acts. See Trempe v. Aetna Casualty and Sur. Co., 480 N.E.2d 670, 676 (Mass.App.Ct.1985) (where property loss was due to fire, not unfair acts, Sec. 9 damages were denied); Shapiro v. Public Serv. Mut. Ins. Co., 19 Mass.App. 648, 477 N.E.2d 146, 153-54 (1985) (plaintiff who did not establish causal connection between 93A unfair act and loss of money or property not entitled to 93A damages but entitled to attorney's fees pursuant to act). Our examination of the record shows that plaintiff Bisesti testified that a total of $5,893[4] was spent by R & E and himself "in order to take appropriate legal action with regard to the state matter." App.Vol. IV at 1091. We found no other testimony or evidence of monetary expenditures relative to the state lawsuit.
 
 
 40
 Under the circumstances, there must be a remand for reconsideration and recomputation of the 93A damages award. Unless we have missed something in the record, the monetary loss suffered by both plaintiffs in defending the state court action was $5,893. That was (approximately) the damages found by the jury in the abuse of process count. The 93A award of damages by the court duplicated the damages awarded on the abuse of process count. The $20,000 award of damages ($10,000 against Freedman and $10,000 against Kletter) was also far in excess of the actual monetary loss suffered by the plaintiffs. The court was well within its discretion in finding that the 93A violation was willful. It could have accepted the jury's award of damages on the abuse of process count and doubled it. See Dowd v. Iantosca, 27 Mass.App.Ct. 325, 538 N.E.2d 33, 38 (1989). It could not, however, assess damages without regard to monetary loss and double them.
 
 
 41
 In a post-trial motion, the plaintiffs moved the district court to adopt the jury's damages findings on counts I (antitrust), II (interference with R & E's prospective economic gain and contractual relations), and V (abuse of process), and to consider the total to be the damages caused by the 93A violation. The plaintiffs also moved for treble damages under 93A. The court denied this motion. Plaintiffs have attempted to appeal the court's order by raising the issue in appellees' brief. Because they failed to appeal the order in compliance with Fed.R.App.P. 4(a)(1) we do not consider it. Rosario-Torres v. Hernandez-Colon, 889 F.2d 314, 320 n. 5 (1st Cir.1989) ("It is a well-settled, and necessary, principle that an appellee cannot assail portions of a judgment favorable to opposing parties without initiating the particular attack in his own notice of appeal and the briefing thereon."); Bath Iron Works Corp. v. White, 584 F.2d 569, 573 n. 2 (1st Cir.1978) ("White, having failed to file a cross-petition for review, is precluded now from attacking the Board's decision in an attempt to enlarge his rights thereunder."). See also 9 J. Moore, Moore's Federal Practice p 204.11 (2d ed. 1990).
 
 IV. Attorney's Fees
 
 42
 The district court awarded attorney's fees and costs to R & E pursuant to 15 U.S.C. Sec. 15(a) and Mass.Gen.L. ch. 93A, Sec. 11. Concluding that a calculation of attorney's fees under chapter 93A would produce the same results as the federal "lodestar" method, and finding that the work done on all the claims was interrelated and indivisible, the district court used the federal lodestar approach to calculate the entire attorney's fees award. It multiplied the number of hours "reasonably expended" in the entire litigation by appropriate hourly rates. The court then reduced the overall figure by twenty-five percent in order to exclude compensation for the tort claims. Citing Linthicum v. Archambault, 379 Mass. 381, 398 N.E.2d 482, 488 (1979), and Alyeska Pipeline Co. v. Wilderness Society, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1974), the district court found that an award of attorney's fees for the four tort claims was not warranted because "[t]he traditional American rule requires that a litigant bear his own expenses, and this rule applies absent a statute explicitly shifting the fee burden." The final figure arrived at for the attorney's fees under the antitrust and chapter 93A counts was $80,260.50. The court also awarded costs totaling $7,712.97. These amounts were assessed against CWS, Kletter and Freedman jointly and severally. Freedman challenges the district court's assessment of attorney's fees and costs against him.
 
 
 43
 Freedman claims that the court erred in assessing fees jointly and severally against him under both the federal fee-shifting statute and the state fee-shifting statute because he was held liable only under the state statute. We agree. The jury found only CWS liable on the antitrust count. It found that Freedman was not liable on the antitrust count. The judgment followed the verdict. To the extent that the award represents fees for the antitrust claim, Freedman is not liable. Freedman is liable for attorney's fees based solely on chapter 93A liability. This means that defendant can only be assessed attorney's fees and costs for the time spent on the 93A count. There has to be a remand for a re-determination of the attorney's fees and costs to be assessed against Freedman under 93A. The 93A award of attorney's fees must, of course, be governed by Massachusetts law.
 
 
 44
 Attorney's fees may be awarded even if the court does not award damages under 93A. Shapiro v. Public Serv. Mutual Ins. Co., 477 N.E.2d at 153-54; see also Raymer v. Bay State Nat'l Bank, 424 N.E.2d 515, 521 (Mass.1981) (where nominal damages awarded, "modest" attorney's fees allowed). This is because "there is a benefit to the public where deception in the marketplace is brought to light (and thereby corrected) by an individual who has been deceived even though his actual damages were not proved." Trempe v. Aetna Casualty and Sur. Co., 480 N.E.2d at 676. In determining reasonable fees under 93A, the district court should consider the following factors:
 
 
 45
 the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases.
 
 
 46
 Linthicum v. Archambault, 398 N.E.2d at 488.
 
 V. Conclusion
 
 47
 The district court's denial of defendant Freedman's motion for judgment n.o.v. on the slander count is reversed.
 
 
 48
 The district court's denial of defendant's motion for judgment n.o.v. on the abuse of process count is affirmed.
 
 
 49
 The district court's damages award on the chapter 93A count is set aside and remanded.
 
 
 50
 The attorney's fees and costs assessed against Freedman are set aside and remanded.
 
 
 51
 Affirmed in part, reversed in part, and remanded for proceedings consistent herewith.
 
 
 52
 Costs awarded to appellant.
 
 APPENDIX
 
 53
 Jury's Answers to Special Interrogatories on Slander
D. Plaintiff Richard V. Bisesti's Claim for Slander
 1. Liability
 a. Is defendant Industrial Services of America, Inc. d.b.a. Computerized
 Waste Systems, Inc. or Computerized Waste Systems, Inc. liable for slander of
 plaintiff Bisesti?
 No
-------------------------------------------------------------------------------
 (Yes or No)
 b. Is defendant Harry Kletter liable for slander of plaintiff Bisesti?
 Yes
-------------------------------------------------------------------------------
 (Yes or No)
 c. Is defendant Joseph Freedman liable for slander of plaintiff Bisesti?
 Yes
-------------------------------------------------------------------------------
 (Yes or No)
 d. Is defendant Paul Burke liable for slander of plaintiff Bisesti?
-------------------------------------------------------------------------------
 2. Damages
 a. If you have found defendants liable in questions a, b, c, and/or d, what
 amount of damages do you award plaintiff Richard V. Bisesti?
 None (in words)
------------------------------------------------------------------
$ .0 (in
 figures).
 ----------------------------------------------------------
 Against defendant Industrial Services of America Inc., d.b.a. Computerized
 Waste Services, Inc. or Computerized Waste Services, Inc.?
 None (in words)
------------------------------------------------------------------
$ .0 (in
 figures).
 ----------------------------------------------------------
 Against defendant Harry Kletter?
 One hundred thousand and 00/100 (in words)
------------------------------------------------------------------
$ 100,000.00 (in
 figures).
 ----------------------------------------------------------
 Against defendant Joseph Freedman?
 One hundred thousand and 00/100 (in words)
------------------------------------------------------------------
$ 100,000.00 (in
 figures).
 ----------------------------------------------------------
 Against defendant Paul Burke?
 None (in words)
------------------------------------------------------------------
$ 0. (in
 figures).
 ----------------------------------------------------------
 OR
 Jointly and severally against all of the defendants that you have found
 liable in questions a, b, c, and/or d?
 None (in words)
------------------------------------------------------------------
$ 0. (in
 figures).
------------------------------------------------------------------
 
 
 
 [1]
 See O'Connor v. Raymark Indus., Inc., 401 Mass. 586, 518 N.E.2d 510, 513 (1988):
 We have said before, and we repeat, "that if two or more wrongdoers negligently contribute to the personal injury of another by their several acts, which operate concurrently, so that in effect the damages suffered are rendered inseparable, they are jointly and severally liable." Chase v. Roy, 363 Mass. 402, 408, 294 N.E.2d 336 (1973). Burke v. Hodge, 217 Mass. 182, 184-185, 104 N.E. 450 (1914). See Payton v. Abbott Labs, 780 F.2d 147, 157 (1st Cir.1985).
 
 
 [2]
 The district court properly decided the chapter 93A claim itself. There is no right to trial by jury under the statute. Nei v. Burley, 388 Mass. 307, 446 N.E.2d 674, 677-79 (1983)
 
 
 [3]
 The purposes of Sec. 9 and Sec. 11 are similar, and the principles established in Sec. 9 cases often apply to Sec. 11 cases. For example, in Trempe v. Aetna Casualty & Sur. Co., 20 Mass.App. 448, 480 N.E.2d 670, 676 (1985), the court stated, "Section 9(4) and Sec. 11 are based upon the same policy considerations and employ identical language with respect to awards of counsel fees and costs. We, therefore, reach a consistent conclusion [when citing a Sec. 11 case] and the award of counsel fees is to stand [pursuant to Sec. 9]." We follow this lead and occasionally cite Sec. 9 cases
 
 
 [4]
 It would appear that the jury rounded off this amount to $6,000 and assessed $3,000 each against Freedman and Kletter