RONALD T. WEST *vs.* SHAWMUT DESIGN
& CONSTRUCTION.

No. 94-P-819.

Suffolk. April 20, 1995. - September 19, 1995.

Present: DREBEN, GILLERMAN, & PORADA, JJ.

Further appellate review granted, 421 Mass. 1108 (1995).

*Negligence,* Construction work. *Evidence,* Income from collateral source.
*Practice, Civil,* Instructions to jury.

At the trial of a negligence action in which evidence was admitted of the
plaintiff's receipt of income from a collateral source (workers' compen-
sation benefits) while he was disabled, the judge erred in refusing to
instruct the jury not to deduct that income in computing damages be-
cause the plaintiff was required by law to repay any such receipts from
the award: a new trial on the issue of damages was required. [252-253]

CIVIL ACTION commenced in the Superior Court Depart-
ment on July 31, 1992.

The case was tried before *Hiller B. Zobel,* J.

*Chester L. Tennyson, Jr.,* for the plaintiff.

*William A. Bolton* for the defendant.

DREBEN, J. The plaintiff appeals from a judgment in his
favor of $116,000 claiming that the trial judge abused his
discretion in denying the plaintiff's motion in limine to pre-
clude evidence that he was receiving collateral source income
and in refusing to instruct the jury that such income had to
be repaid. We conclude that, even if the judge did not abuse
his discretion in admitting the evidence of collateral source
income, he should have instructed that the money had to be
repaid. A new trial on the issue of damages, only, is required.

We summarize the pertinent evidence at trial. While at
work on a construction site on October 15, 1990, the plaintiff
fell into a hole and was hit by a wheelbarrow loaded with
concrete blocks weighing three to four hundred pounds. At
trial in June, 1993, the plaintiff testified that because of the

injuries sustained at the time of the accident he had not sought any work after that date. He presented medical evidence that as a result of the accident he suffered herniated discs in the cervical and lumbar regions of his spine which rendered him permanently disabled. A vocational expert testified that because of the plaintiff's physical impairments, his work experience (unskilled laborer), education, and age, he was not employable on the open market. The defendant's medical expert acknowledged that the plaintiff suffered from a herniated disc and arthritis aggravated by the accident but testified that, in his opinion, the injuries were not caused by it. The expert also recognized that the plaintiff was disabled from performing any kind of work requiring bending or lifting. When asked whether there was likely to be any improvement in his condition, the expert testified that there might be some improvement, but the plaintiff would always have a partial disability and would be unable to bend or lift over twenty pounds for the rest of his life.[1]

The plaintiff's motion in limine sought to prevent defense counsel from asking about the plaintiff's receipt of workers' compensation benefits. In accordance with the judge's ruling that he could not mention the source of these payments, but could inquire as to their amount, counsel asked the plaintiff whether he had been receiving $426.26 weekly from an unnamed source and whether he had been receiving that sum for the last three years. The plaintiff responded in the affirmative to both questions. The plaintiff could not remember how much he had earned in any one year from his construction work in the five years preceding the accident.[2]

---

[1]Counsel for the defendant in his closing argument referred to a report of the expert, not in the record on appeal, in which he apparently opined that the plaintiff was only partially disabled.

[2]The vocational expert testified that construction workers worked an average of thirty seven and one-half weeks a year and, in 1990, earned between $14.70 to $16.00 an hour.

The plaintiff's testimony suggested that his work was not regular. His responses on cross-examination as to his earnings were as follows:

Q: "In the year before the accident, do you have any idea how much money you earned from Easton Concrete and Cutting?"
A: "No sir."

During closing argument, defense counsel pointed out that the plaintiff had not even tried to get back to work. "Why? Perhaps it's because he's getting $426.26 ongoing."

Q: "No idea whatsoever."
A: "No sir."
Q: "Could be five thousand dollars, or it could be fifteen thousand dollars?"
A: "No idea sir."
Q: "Do you have any idea what the most amount of money you ever made in the five years before your accident was?"
A: "Approximately?"
Q: "To your best memory?"
A: "Thirty-five to forty, I believe."
Q: "What year was that?"
A: "I don't remember, that, I got the full year in."
Q: "That was the one year that you got the full year in."
A: "Yes sir."
Q: "And you think it was thirty-five or forty?"
A: "I'm not positive."
Q: "Somewhere in that vicinity?"
A: "Yes."
Q: "And the other years you just have no memory as to how much you made?"
A: "No sir."
Q: "So it could be as little as five to six thousand a year for five to six years?"
A: "No sir."
Q: "That's fair or it's not fair."
A: "That's not fair."
Q: "Okay, so you have a memory of making a little more than five or six thousand dollars a year?"
A: "Yes sir."
Q: "But you don't have a memory of more than that? Of earning more than that?"
A: "I do."
Q: "What we're trying to get here is your best memory."
    "Now you testified a few moments ago that you didn't have any idea how much money you earned?"
A: "No sir."
Q: "But now you're testifying that you know it was more than five or six thousand dollars a year?"
A: "I'm not sure, sir."
Q: "You have no memory?"
A: "Not on figures, no sir."
Q: "But you are currently receiving from an unnamed source approximately —"
MR. TENNYSON: "Objection, Your Honor."
Q: " — $426.26 cents weekly, are you not?"

After the judge had completed his instructions to the jury, which did not mention the receipt by the plaintiff of weekly income from an unnamed source, the plaintiff requested the judge to give the following instruction:

> "You've heard that the plaintiff has received a certain amount of money from some source, for some period of time. You are not to deduct this sum from any award you make, since you did not know the circumstances of those payments, and in fact, those payments have to be repaid."

In place of the requested instruction, the judge instructed the jury as follows:

> "Now, you have heard that the plaintiff has received a certain amount of money from some source for some period of time. You are not to deduct this sum from any award you may make since you do not have the circumstances of these payments, and therefore, I say again what I said before, you will focus on the evidence of this case, the evidence.

> "You may consider the payments only in terms of what they may or may not tell you with respect to what the plaintiff's incentive or lack of incentive may be with respect to returning to work."

The jury found the defendant negligent, that its negligence was the proximate cause of the plaintiff's injuries, and awarded the plaintiff $116,000.

The plaintiff claims that the judge should not have admitted the evidence concerning the collateral source income. Ordinarily, such evidence is excluded because, although the receipt of such income does not reduce the plaintiff's damages or the defendant's liability, "jurors might be led by the irrelevancy to consider plaintiffs' claims unimportant or trivial or to refuse plaintiffs' verdicts or reduce them, believing that otherwise there would be unjust double recovery." *Goldstein*

v. *Gontarz*, 364 Mass. 800, 809 (1974). *Corsetti* v. *Stone Co.*, 396 Mass. 1, 17 (1985). In some circumstances, however, "evidence of collateral source income may be admissible, in the discretion of the trial judge, as probative of a relevant proposition," e.g., "credibility of a particular witness." *Corsetti*, 396 Mass. at 17. "Thus in *McElwain* v. *Capotosto*, 332 Mass. 1, 2-3 (1954), [the court] held that it was within the trial judge's discretion to admit evidence that the plaintiff was being paid while he was out of work because, even though the sums paid to the plaintiff would not properly reduce the recoverable damages for actual loss of earning capacity due to the accident, the evidence nevertheless was relevant to the plaintiff's motive for staying out of work." *Ibid.*

The difficulty, of course, lies in determining the circumstances in which such evidence is to be permitted. The plaintiff's credibility is often at issue, and the danger is, as Justice Abrams said in her dissent in *Corsetti*, 396 Mass. at 31, that the exception will swallow the rule. A variety of different approaches have been taken. Some courts, like the United States Supreme Court in a case under the Federal Employers Liability Act, take the strict view that the evidence should be excluded as "the likelihood of misuse by the jury clearly outweighs the value of this evidence. Insofar as the evidence bears on the issue of malingering, there will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of a disability pension." *Eichel* v. *New York Cent. R.R.*, 375 U.S. 253, 255 (1963). See also *Jenks* v. *Larimer*, 268 Or. 37, 43-44 (1974). Other courts require that there first be other evidence of malingering before the evidence is admissible. E.g., *Young* v. *Environmental Air Prods., Inc.*, 136 Ariz. App. 206, 212 (1982); *Hrnjak* v. *Graymar, Inc.*, 4 Cal. 3d 725, 733-734 (1971); *Nasser* v. *Auto Club Ins. Assn.*, 435 Mich. 33, 58-59 (1990). Some impose different limitations, e.g., *Evans* v. *Wilson*, 279 Ark. 224, 226 (1983), while some say it is admissible, for example, to show that the plaintiff's period of convalescence was prolonged. *Ridilla* v. *Kerns*, 155 A.2d 517, 519

(D.C. 1959). For a collection of cases see Annot., 47 A.L.R. 3d 234, particularly 236-252 (1973 & Supp. 1995).

In the present case, the record does not contain any evidence of malingering in the strict sense of feigning illness. Indeed, the defendant's physician testified that the plaintiff's disabilities were manifested on objective tests.

The plaintiff argues, relying on *Corsetti*, that there should be some evidence of a motive to remain out of work apart from the fact that a plaintiff is receiving collateral income before such evidence is admissible. *McElwain* v. *Capotosto*, 332 Mass. 1, does not mention other evidence. See also *DeMedeiros* v. *Koehring Co.*, 709 F.2d 734, 740 n.3 (1st Cir. 1983), where the First Circuit, prior to the *Corsetti* decision, considered that Massachusetts law does not require other evidence, but rather leaves the question of admissibility to the discretion of the trial court, with the requirement that a limiting instruction be given should the evidence be admitted.

The *Corsetti* court in a footnote emphasized the importance of the existence of other evidence of motivation,[3] implicitly suggesting that such extrinsic evidence should be an important factor in the exercise of the judge's discretion. While there was no evidence of feigning illness, the inability of the plaintiff to remember his pre-accident earnings, see note 2, *supra*, coupled with some evidence that the disability was partial, might support an argument that the collateral evidence was sufficiently probative to show a motive for the plaintiff's remaining out of work. We need not, however, in this case decide whether the admission exceeded the outer limits of a judge's discretion, although a majority of the court is inclined to this view.

Even if the judge did not abuse his discretion in admitting the evidence of collateral source income, once that evidence

---

[3]Footnote 14 at 17 of the *Corsetti* decision states in relevant part: "Where there is no other evidence to suggest that a plaintiff's prolonged absence from work is a result of anything other than his disability, the fact that he was receiving collateral source income has little, if any, probative value. Where, however, other evidence of malingering makes the plaintiff's motive for staying out of work a genuine issue at trial, evidence of collateral source income may be persuasive confirmation of malingering."

had been admitted he should not have denied the requested instruction[4] that the jury be informed that the statutory scheme under which the plaintiff was receiving collateral source income required that income to be repaid. See G. L. c. 152, § 15. The concern expressed in *Goldstein*, 364 Mass. at 809, in both the majority opinion of *Corsetti*, 396 Mass. at 17 and the dissents, Liacos, J., at 20-29, and Abrams, J., at 31, & n.1, and in *Torre* v. *Harris-Seybold Co.*, 9 Mass. App. Ct. 660, 665-666 (1980), that juries will refuse or reduce plaintiffs' verdicts believing that otherwise there would be unjust double recovery, makes it appropriate that such an instruction be given. As suggested by the First Circuit in *DeMedeiros* v. *Koehring Co.*, 709 F.2d at 741, the court should instruct "that the jury should not deduct [the collateral source receipts] in computing damages since [the] plaintiff will later be required by law to repay any such receipts from the award." See also *Goldstein*, 364 Mass. at 814. Compare *Rolanti* v. *Boston Edison Corp.*, 33 Mass. App. Ct. 516, 524-526 (1992). Since the jury were not so instructed, they may have reduced the verdict thinking there was a double recovery or that the plaintiff had suffered reduced damages in view of the plaintiff's receipts.

The judgment is reversed, and the case is remanded to the Superior Court for a new trial confined to the issue of damages. See *Corsetti*, 396 Mass. at 27. At retrial, the collateral source evidence, which in this case is at most relevant to motive but not to damages, will not be admissible.

*So ordered.*

---

[4]Although the plaintiff did not repeat his request after the judge had reinstructed the jury, we assume that the specific request at the close of the judge's initial instructions sufficiently apprised the judge of the plaintiff's position. See *O'Connor* v. *Raymark Indus. Inc.*, 401 Mass. 586, 591 (1988). In any event, because of the importance of the instruction, we exercise our discretion to consider the issue. See *Scannell* v. *Ed. Ferreirinha & Irmao, Lda.*, 401 Mass. 155, 163 (1987) ("Appellate courts have discretion to consider issues not argued below where injustice might otherwise result").