NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12921

SETH DOULL[1] & another[2]  vs.  ANNA C. FOSTER & another.[3]


Franklin.     October 5, 2020. - February 26, 2021.

Present:  Budd, C.J., Gaziano, Lowy, Cypher, & Kafker, JJ.


Negligence, Medical malpractice, Causation, Standard of care.
    Medical Malpractice, Standard of care, Consent to medical
    treatment.  Practice, Civil, Instructions to jury,
    Amendment of complaint, Interrogation of jurors.



    Civil action commenced in the Superior Court Department on
May 28, 2014.

    The case was tried before Mary-Lou Rup, J., and a motion
for a new trial was considered by her.

    The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


    Krzysztof G. Sobczak for the plaintiffs.
    Tory A. Weigand for the defendants.
    Jennifer A. Creedon & Stephanie M. Gazda, for Massachusetts
Defense Lawyers Association, amicus curiae, submitted a brief.

---

    [1] Individually, as personal representative of the estate of
Laura Doull, and as next friend of Troy Doull.

    [2] Megan Doull.

    [3] Robert J. Miller.

<u>Brendan G. Carney, Thomas R. Murphy, Kevin J. Powers, &</u> <u>Elizabeth N. Mulvey</u>, for Massachusetts Academy of Trial Attorneys, amicus curiae, submitted a brief.

KAFKER, J.  Causation has been a continually contested concept in tort law, confounding courts, commentators, and practitioners.  In this medical malpractice case, we are asked once again to clarify our case law on causation, along with a series of other issues that are more readily decided.  Specifically, we examine the use of two competing causation standards:  the traditional but-for causation standard and the alternative substantial contributing factor standard.  After careful review, we conclude that the traditional but-for factual causation standard is the appropriate standard to be employed in most cases, including those involving multiple alleged causes.  This is the approach recommended by the Restatement (Third) of Torts:  Liability for Physical and Emotional Harm (2010) (Restatement [Third]).  In doing so, we conclude that the substantial factor test is unnecessarily confusing and discontinue its use, even in multiple sufficient cause cases.  Because the jury in this case were instructed using traditional but-for causation principles, the instructions were proper.  We

also reject all of the plaintiffs' other claims on appeal and affirm the order denying a new trial.[4]

1.  Background.  We summarize the facts that could have been found by the jury, reserving certain facts for later discussion.

a.  Facts.  Between 2008 and 2011, Laura Doull was a patient of Anna C. Foster, a nurse practitioner, and her supervisor, Dr. Richard J. Miller (collectively, the defendants).  Miller, an internist, owned the medical practice where Doull was a patient.

In August 2008, Doull had an appointment with Foster to seek advice regarding perimenopause-related symptoms.  Foster prescribed Doull a topically applied, naturally derived progesterone cream to treat the symptoms.[5]  Foster admitted that she did not document any conversation that she had with Doull about the risks and benefits of, or the alternatives to, the progesterone cream, but she did testify that they discussed alternatives to it.  However, Foster stated that she did not

---

[4] We acknowledge the amicus briefs submitted by the Massachusetts Academy of Trial Attorneys and the Massachusetts Defense Lawyers Association.

[5] Progesterone is a hormone that humans naturally produce. Supplementing the progesterone that the human body produces is a form of hormone replacement therapy typically used to treat menopause- or perimenopause-related symptoms.  Progesterone supplements come in both synthetic and naturally derived forms.

discuss the possibility with Doull that the progesterone cream could cause blood clots because she did not consider this to be a risk. Doull continued to use the progesterone cream through the spring of 2011.

Earlier that spring, Doull had visited Miller's practice on three separate occasions to complain about shortness of breath. Doull met with Foster on each visit, and Foster performed a physical examination of Doull each time. Doull had a history of asthma and allergies. At the spring 2011 visits, Foster diagnosed Doull's shortness of breath as a symptom of some combination of these long-standing conditions. Miller did not examine Doull during any of these visits.

In May 2011, Doull had a "seizure-like event" and was transported to the hospital. At the hospital, she was diagnosed with a pulmonary embolism, a condition where blood clots or other substances block portions of the pulmonary arteries in the lungs. A pulmonary embolism may cause shortness of breath as well as chronic thromboembolic pulmonary hypertension (CTEPH), a rare disease where pressure in the pulmonary artery increases and causes the heart to fail. Indeed, that May, Doull was diagnosed with CTEPH. A lung scan revealed that blood clots in Doull's lungs were chronic.

In November 2011, Doull underwent surgery in an attempt to remove the blockage from her lungs, but the procedure proved

unsuccessful.  After the surgery, Doull was prescribed various medications to treat the pulmonary hypertension that had resulted from her CTEPH.  None of these medications abated the disease.  In 2015, Doull died from complications arising from CTEPH.  She was forty-three years old.

b.  Procedural history.  Prior to her death, Doull and various family members (collectively, the plaintiffs) commenced this suit against the defendants, claiming negligence, failure to obtain informed consent, and loss of consortium.[6]  Four months before trial, the plaintiffs moved to amend their complaint to include the manufacturer of the progesterone cream, Women's International Compounding Inc. (WIC), as a defendant.  The trial judge denied the plaintiffs' motion.

At trial, the plaintiffs argued that Miller and Foster failed to obtain informed consent from Doull concerning the progesterone cream's risks and alternatives, that Foster failed to diagnose Doull's pulmonary embolism during the spring 2011 visits, and that Miller failed to supervise Foster adequately during all relevant times.

To support these claims, Dr. Paul Genecin, a primary care internal medicine physician and the plaintiffs' expert witness, testified that natural progesterone was not any safer than

_____

[6] Doull's estate continued to prosecute the claims after her death, amending the complaint to add a wrongful death claim.

synthetic derivations of the hormone, and that the cream likely caused Doull to develop blood clots. Genecin also testified that Foster had failed to investigate adequately Doull's shortness of breath complaints during the spring 2011 visits. He testified that diagnosis of Doull's pulmonary embolism during the spring of 2011 could have prevented the onset of CTEPH, and that Miller's failure to supervise Foster's actions constituted a breach of the duty of care.

Dr. Nicholas S. Hill, a pulmonologist and an expert for the defense, testified that there was "no evidence anywhere that indicates that progesterone cream applied to the skin increases the risk of clotting." Hill also disagreed with Genecin's assessment that Doull's CTEPH would have been preventable had Foster diagnosed it during the spring 2011 visits. Specifically, Hill testified that by the time Doull was diagnosed with CTEPH in May 2011, the disease "had been going on for a long time, probably months at least." According to Hill, the chronic nature of Doull's blood clots meant that her outcome would have remained the same had Foster diagnosed her with the disease during the spring of 2011.

The jury returned a verdict for the defendants and answered various special questions. First, the jury found that the defendants had not failed to acquire informed consent from Doull with respect to the progesterone cream. Second, although the

7

jury did find that Foster negligently failed to diagnose Doull's pulmonary embolism, they found that this negligence was not the cause of either the harms suffered by Doull after her seizure-like event in 2011 or her death in 2015.  Finally, the jury found that Miller had been negligent in his supervision of Foster, but that this negligence, too, had not harmed Doull.

Before the jury returned its verdict, the defendants filed a motion to require judicial approval for postverdict contact with jurors, which the judge granted.  After the verdict, the plaintiffs filed a motion for a new trial, which the judge denied.  The plaintiffs then appealed.  We transferred the case from the Appeals Court to this court on our own motion.

2.  Discussion.  "We review the denial of a motion for a new trial for an abuse of discretion, bearing in mind that a judge should exercise his or her discretion only when the verdict is so greatly against the weight of the evidence as to induce in his [or her] mind the strong belief that it was not due to a careful consideration of the evidence, but that it was the product of bias, misapprehension or prejudice" (quotation and citation omitted).  DaPrato v. Massachusetts Water Resources Auth., 482 Mass. 375, 377 n.2 (2019).

a.  Jury instructions.  "In a civil trial, a judge should instruct the jury fairly, clearly, adequately, and correctly concerning principles that ought to guide and control their

action" (quotation and citation omitted).  DaPrato, 482 Mass. at 383 n.11.  "The judge is not bound to instruct in the exact language of the [parties'] requests, however, and has wide latitude in framing the language to be used in jury instructions as long as the instructions adequately explain the applicable law" (quotation and citation omitted).  Id.  When reviewing jury instructions, an "appellate court considers the adequacy of the instructions as a whole, not by fragments" (citation omitted). Id.

The plaintiffs argue that they are entitled to a new trial based on several allegedly erroneous jury instructions regarding the defendants' negligence.  We consider these claims in turn.

i.  Jury instructions on causation.  The plaintiffs claim that the judge's instruction on the element of causation was erroneous.  The judge instructed the jury using a but-for standard for factual causation.  Specifically, the judge instructed:

> "With regard to this issue of causation, the Defendant in question's conduct was a cause of the Plaintiff's harm, that is Laura Doull's harm, if the harm would not have occurred absent, that is but for the Defendant's negligence.  In other words, if the harm would have happened anyway, that Defendant is not liable."

The plaintiffs argue that the judge was required to instruct the jury on a substantial contributing factor standard, instead of this but-for standard, because there were several possible

causes of -- and multiple tortfeasors involved in -- Doull's injuries and death.  The defendants disagree, contending that the instruction given was consistent with both Massachusetts law and the approach taken by the Restatement (Third).[7]  Because the plaintiffs objected to the instruction given by the trial judge, we review for prejudicial error.  DaPrato, 482 Mass. at 384.

We conclude that the but-for standard was the appropriate standard in this case and therefore there was no error.  We also clarify infra how a jury should be instructed on causation in negligence cases involving multiple potential causes of harm.

A.  But-for causation.  We begin with basic causation principles.  It is a bedrock principle of negligence law that a defendant cannot and should not be held liable for a harm unless the defendant caused the harm.  See Wainwright v. Jackson, 291 Mass. 100, 102 (1935) ("The general rule is that one cannot be held liable for negligent conduct unless it is causally related to injury of the plaintiff").  See also Glidden v. Maglio, 430 Mass. 694, 696 (2000) (causation "is an essential element" of proof of negligence).  Causation has traditionally involved two separate components:  the defendant had to be both a factual cause (or "cause in fact") and a legal cause of the harm.  See Leavitt v. Brockton Hosp., Inc., 454 Mass. 37, 45 (2009)

---

[7] We also solicited amicus briefs on whether to adopt the factual causation standard from the Restatement (Third).

("Liability for conduct obtains only where the conduct is . . . a cause in fact of the injury and where the resulting injury is within the scope of the foreseeable risk arising from the negligent conduct"); Kent v. Commonwealth, 437 Mass. 312, 320 (2002), citing Wallace v. Ludwig, 292 Mass. 251, 254 (1935) (negligent conduct must be both "cause in fact of the injury" as well as "legal cause of the injury").  Legal causation is also commonly referred to as "proximate causation."  The Restatement (Third) describes this aspect of the causation inquiry as whether the defendant's conduct was within the "scope of liability."  See Restatement (Third) § 26 comment a (explaining terminology changes from prior Restatements).

Generally, a defendant is a factual cause of a harm if the harm would not have occurred "but for" the defendant's negligent conduct.  See W.L. Prosser & W.P. Keeton, Torts § 41, at 265 (5th ed. 1984) ("An act or an omission is not regarded as a cause of an event if the particular event would have occurred without it").  See, e.g., Hollidge v. Duncan, 199 Mass. 121, 124 (1908) (affirming determination that plaintiff's injuries would not have occurred "but for the defendant's negligence").  See also Reporters' Note to Restatement (Third) § 26 comment b (collecting authorities demonstrating that "but-for test is central to determining factual cause").  This long-standing principle ensures that defendants will only be liable for harms

that are actually caused by their negligence and not somehow indirectly related to it. See Callahan v. Cardinal Glennon Hosp., 863 S.W.2d 852, 862 (Mo. 1993) ("Any attempt to find liability absent actual causation is an attempt to connect the defendant with an injury or event that the defendant had nothing to do with. Mere logic and common sense dictate[] that there be some causal relationship between the defendant's conduct and the injury or event for which damages are sought"). See also Paroline v. United States, 572 U.S. 434, 452 (2014) ("If the conduct of a wrongdoer is neither necessary nor sufficient to produce an outcome, that conduct cannot in a strict sense be said to have caused the outcome"); Price Waterhouse v. Hopkins, 490 U.S. 228, 282 (1989) (Kennedy, J., dissenting) ("Any standard less than but-for . . . represents a decision to impose liability without causation"). Another way to think about the but-for standard is as one of necessity; the question is whether the defendant's conduct was necessary to bringing about the harm. Restatement (Third) § 26 comment b ("a factual cause can also be described as a necessary condition for the outcome"). The majority of courts around the country and all three Restatements have required but-for causation in most cases. See Reporter's Note to Restatement (Third) § 26 comment a. See also Restatement (Third) § 26; Restatement (Second) of Torts § 432(1)

(1965) (Restatement [Second]); Restatement of Torts § 432(1) (1939).

Additionally, for the defendant to be liable, the defendant must also have been a legal cause of the harm. This means that the harm must have been "within the scope of the foreseeable risk arising from the negligent conduct." Leavitt, 454 Mass. at 45. This aspect of causation is "based on considerations of policy and pragmatic judgment." Kent, 437 Mass. at 320-321, quoting Poskus v. Lombardo's of Randolph, Inc., 423 Mass. 637, 640 (1996). These considerations are separate and distinct from factual causation. Kent, supra at 320. And, together, these concepts identify which defendants can be held liable for negligent conduct. This case focuses primarily on factual causation.

B. Exceptions to but-for causation. There are several situations in which a but-for standard does not work and has been altered to avoid unjust and illogical results. See Paroline, 572 U.S. at 452 ("tort law teaches that alternative and less demanding causal standards are necessary in certain circumstances to vindicate the law's purposes"). One is the situation involving multiple sufficient (or overdetermined) causes. See Restatement (Third) § 27 comment b ("Courts and scholars have long recognized the problem of overdetermined harm -- harm produced by multiple sufficient causes -- and the

inadequacy of the but-for standard for this situation").  The classic example involves two separate fires merging and destroying a house.  See generally Anderson v. Minneapolis, St. Paul & Sault Ste. Marie Ry. Co., 146 Minn. 430 (1920).  If either fire could have independently destroyed the home, then neither fire could be a but-for cause of the harm (because the home would have been destroyed by the other regardless), thereby relieving each of liability under a but-for standard.  To avoid this unjust result, there must be a different causation standard in these cases.  See Restatement (Third) § 27 comment c ("A defendant whose tortious act was fully capable of causing the plaintiff's harm should not escape liability merely because of the fortuity of another sufficient cause").  These cases, however, are exceedingly rare.  Id. at § 27 comment b.

The first two Restatements devised an alternative causation standard, with its own terminology, to address this specific problem.  In circumstances in which but-for did not work, they treated defendants as a cause where their conduct was not a necessary but-for cause but was rather a so-called "substantial factor" in bringing about the harm.  Specifically, they provided that "[i]f two forces are actively operating, one because of the actor's negligence, the other not because of any misconduct on his part, and each of itself is sufficient to bring about harm to another, the actor's negligence may be found to be a

substantial factor in bringing it about."  Restatement (Second) § 432(2).  The substantial factor terminology has, as explained infra, proved confusing, as it seems odd to describe something that may not have been a cause at all as a substantial factor. Nonetheless, the terminology was devised to address the specific problem of multiple sufficient causes where but-for causation could not be proved.  It was not intended to displace but-for causation more generally.  In circumstances other than multiple sufficient causes, but-for causation was required for a defendant to be held liable.  Id. at § 432(1).

A number of courts, including this one, have also recognized the difficulty of proving but-for causation in toxic tort and asbestos cases.  See O'Connor v. Raymark Indus., Inc., 401 Mass. 586, 588-591 (1986); Morin v. AutoZone Northeast, Inc., 79 Mass. App. Ct. 39, 42 (2011).  See also, e.g., Rutherford v. Owens-Ill., Inc., 16 Cal. 4th 953, 958 (1997); Bostic v. Georgia-Pac. Corp., 439 S.W.3d 332, 353 (Tex. 2014). In these cases, it can be difficult, if not impossible, for the plaintiff to identify which particular exposures were necessary to bring about the harm.  See Matsuyama v. Birnbaum, 452 Mass. 1, 30 (2008);[8] O'Connor, supra, at 588-589; Welch v. Keene Corp.,

_____

[8] Contrary to the concurrence's suggestion, we certainly are not suggesting here that Matsuyama is an asbestos or toxic tort case, as the sentence preceding the citation makes clear.  For

31 Mass. App. Ct. 157, 162 (1991). It may be clear that a toxic substance or asbestos caused the harm, and that the defendants exposed the plaintiffs to the toxic substance or the asbestos, but it may not be possible to determine which exposures were necessary to cause the harm. In this situation, as in multiple sufficient cause cases, the but-for standard is inadequate, as it could allow all defendants to avoid liability despite their negligent exposure of the plaintiffs to the substances, as it may not be possible to prove which exposures were necessary to bring about the harm and which were not. The substantial factor test again fixes this problem by relaxing the causal requirement and permitting liability in these circumstances.

Instead of limiting the substantial factor test to these two contexts where but-for causation cannot be established, however, the first two Restatements combined the substantial factor terminology and the but-for causation requirement in a confusing manner. The term "substantial factor" was employed generally in negligence cases. In other words, a defendant

---

the sake of clarity, here is the language to which we are referring in Matsuyama -- "The 'substantial contributing factor' test is useful in cases in which damage has multiple causes, including but not limited to cases with multiple tortfeasors in which it may be impossible to say for certain that any individual defendant's conduct was a but-for cause of the harm . . . ." (emphasis added). Matsuyama, 452 Mass. at 30. This is the point we are making here as well, which is why we included a citation to Matsuyama.

could not be liable for negligence under the first two Restatements unless the defendant was a "substantial factor" in bringing about the harm. See Restatement (Second) § 431; Restatement of Torts § 431. But to be a substantial factor, the defendant also had to be a but-for cause of the harm in most cases. See Restatement (Second) § 432(1); Restatement of Torts § 432(1). The sole exception to the but-for causation requirement was for multiple sufficient cause cases. The result was to merge and confuse the but-for standard and the substantial factor test. It also blurred the line between factual and legal causation. See Restatement (Third) § 29 comment a ("The 'substantial factor' requirement . . . in the Second Restatement of Torts has often been understood to address proximate cause, although that was not intended").

C. Multiple cause cases. Against this background, the plaintiffs urge, and some of our prior cases suggest, that a substantial contributing factor standard should be used whenever there are multiple potential causes of a harm. We conclude, however, that a but-for standard is the proper standard in most negligence cases, as but-for causes can be identified and conduct that had no causal effect can be excluded.

There is a significant difference between multiple sufficient cause and toxic tort cases and other cases involving multiple potential causes. In multiple sufficient cause cases,

the existence of two independently sufficient causes means that we cannot identify a but-for cause even though there are multiple tortfeasors who would have caused the harm on their own.  In the absence of one of the causes, the other cause would still have been sufficient to bring about the harm.  Similarly, in toxic tort cases, although but-for causation may be theoretically sound, it is nearly impossible for a plaintiff or a jury to determine with any certainty which exposures were necessary to bring about the harm and which were not.  Using a strict but-for standard in these cases may frustrate the ability of plaintiffs to recover for negligent conduct that caused their harm, because of the happenstance of multiple defendants engaging in negligent acts each of which alone may be sufficient to cause the harm, and the impossibility of proving which of the negligent acts were but-for causes.  Thus, if anyone is to be held liable for these harms, there must be an exception to the but-for standard.  The concern uniting these two types of cases is the great difficulty, if not impossibility, of identifying but-for causes of the harm.

This concern is not present in most cases involving multiple alleged causes, however.  There is nothing preventing a jury from assessing the evidence and determining which of the causes alleged by the plaintiff were actually necessary to bring about the harm, and which had nothing to do with the harm.

Indeed, this case shows that the but-for test works well even when a plaintiff alleges that there are multiple causes of a harm. Here, the plaintiffs alleged that the various negligent acts of the defendants caused Doull's harm and eventual death. The jury were instructed on a but-for standard.[9] As explained above, the purpose of this but-for standard is to separate the conduct that had no impact on the harm from the conduct that caused the harm. The jury ultimately did just that -- it concluded that the defendants did not cause the harm even though they committed a breach of their duties by failing to diagnose her pulmonary embolism. Tort law has long made this causal connection a prerequisite for imposing liability. Here, using a but-for standard, the jury concluded that no such connection existed between the defendant's conduct and Doull's harm and death.[10] This shows how, even in a case involving multiple

---

[9] The judge instructed the jury that "[the] conduct was a cause of the Plaintiff's harm, that is Laura Doull's harm, if the harm would not have occurred absent, that is but for the Defendant's negligence. In other words, if the harm would have happened anyway, that Defendant is not liable."

[10] Indeed, as described above, the defendants' expert testified that Doull's outcome would not have been different even if Foster had diagnosed her condition in May 2011. The jury appear to have credited this testimony, as it would explain why the jury concluded that Foster, despite her negligence, did not cause Doull's harm. In this way, expert testimony will often be significant in cases involving multiple potential causes, as it will help the jury distinguish between causes that were necessary to bring about the harm and causes that were not.

causes in which the plaintiffs argue it was error not to use the substantial contributing factor test, the but-for standard did what it is supposed to do and prevented the defendants from being held liable where the jury concluded that they did not cause the harm.  Indeed, these types of cases, alleging multiple causes, may be where the but-for test is most important and useful, as it serves to separate the necessary causes from conduct that may have been negligent but may have had nothing to do with the harm caused.

One source of confusion is the mistaken belief that there can only be a single but-for cause of a harm.[11]  Indeed, the plaintiffs argue that the presence of multiple potential causes here means that no one cause could be the "sole/but-for" cause. But there is no requirement that a defendant must be the sole factual cause of a harm.  See Reporters' Note to Restatement (Third) § 26 comment c ("That a party's tortious conduct need only be a cause of the plaintiff's harm and not the sole cause is well recognized and accepted in every jurisdiction").  See also, e.g., Bostock v. Clayton County, 140 S. Ct. 1731, 1739 (2020) ("[But-for causation] can be a sweeping standard.  Often,

---

[11] For an example of this confusion, look no further than the concurrence.  The concurrence thinks that by instructing the jury that there could be more than one but-for cause, we are creating a whole new standard separate and apart from the but-for standard -- a "but-for plus" standard.  See post at    .

events have multiple but-for causes"); June v. Union Carbide Corp., 577 F.3d 1234, 1242 (10th Cir. 2009) ("A number of factors [often innocent] generally must coexist for a tortfeasor's conduct to result in injury to the plaintiff. . . . That there are many factors does not mean that the defendant's conduct was not a cause").

In fact, there is no limit on how many factual causes there can be of a harm. Restatement (Third) § 26 comment c ("there will always be multiple . . . factual causes of a harm, although most will not be of significance for tort law and many will be unidentified"). The focus instead remains only on whether, in the absence of a defendant's conduct, the harm would have still occurred. See id. ("The existence of other causes of the harm does not affect whether specified tortious conduct was a necessary condition for the harm to occur"). This is not a high bar. See id. at § 26 comment i ("Quite often, each of the alleged acts or omissions is a cause of the harm, i.e., in the absence of any one, the harm would not have occurred"). And acknowledging the potential for multiple but-for causes "obviates any need for substantial factor as a test for

causation."  Reporters' Note to Restatement (Third) § 26 comment j.[12,13]

The terminology of the substantial factor standard also leads to confusion.  See Restatement (Third) § 26 comment j ("The substantial-factor test has not, however, withstood the test of time, as it has proved confusing and been misused").  See also Sanders, Green, & Powers, The Insubstantiality of the "Substantial Factor" Test for Causation, 73 Mo. L. Rev. 399, 430 (2008) (substantial factor test "gives no clear guidance to the factfinder about how one should approach the causal problem" and "permits courts to engage in fuzzy-headed thinking about what

_____

[12] Where multiple causes are alleged, it is appropriate to instruct a jury that there can be more than one factual cause of a harm.

[13] The Restatement (Third) introduces a novel concept referred to as "causal sets," see Restatement (Third) § 26 comment c.  This concept is suggested as a helpful way to think of factual causation in a multiple cause case.  It is not a separate test and is meant to be used only if it is deemed to be helpful.  It is not an independent legal requirement.  A causal set is defined as the group of actions or conditions that were necessary to bring about the harm.  Id. ("[C]onceive of a set made up of each of the necessary conditions for the plaintiff's harm.  Absent any one of the elements of the set, the plaintiff's harm would not have occurred").  So, in cases where the factual cause of a harm is an aggregate of multiple acts, omissions, or conditions, the Restatement simply labels the aggregate as a "causal set."  It also explains that there may be competing causal sets.  See id. at § 27 comment f.  Importantly, it does not change the standard of causation -- a defendant would still only be a factual cause if the harm would not have occurred but for the defendant's actions.

sort of causal requirement should be imposed on plaintiffs"
[emphasis omitted]).  Unsurprisingly, it has "few supporters."
Reporters' Note to Restatement (Third) § 26 comment j.[14]

The drafters of the most recent Restatement concluded that
the confusing terminology has rendered the substantial factor
test potentially both too strict and too lenient as a standard

---

[14] Indeed, as the Restatement points out, many scholars have criticized the substantial factor test.  See, e.g., Dorsaneo, Judges, Juries, and Reviewing Courts, 53 S.M.U. L. Rev. 1497, 1528-1530 (2000) (substantial factor "render[s] the causation standard considerably less intelligible"); Fischer, Insufficient Causes, 94 Ky. L.J. 277, 277 (2005) ("Over the years, courts also used the substantial factor test to do an increasing variety of things it was never intended to do and for which it is not appropriate. . . .  [T]he test now creates unnecessary confusion in the law and has outlived its usefulness"); Robertson, The Common Sense of Cause in Fact, 75 Tex. L. Rev. 1765, 1776 (1997) ("By using the term ["substantial factor"] in three different senses, the Restatement [Second] of Torts has contributed to a nationwide confusion on the matter"); Stapleton, Legal Cause:  Cause-in-Fact and the Scope of Liability for Consequences, 54 Vand. L. Rev. 941, 945, 978 (2001) ("The obfuscating terminology of legal cause, proximate cause, and substantial factor should be replaced . . ."); Wright, Once More into the Bramble Bush:  Duty, Causal Contribution, and the Extent of Legal Responsibility, 54 Vand. L. Rev. 1071, 1080 (2001).  See also H.L.A. Hart & T. Honoré, Causation in the Law 124 (2d ed. 1985) ("Little, however, seems to be gained by describing, even to a jury, such cases in terms of the admittedly indefinable idea of a 'substantial factor'"); W.L. Prosser & W.P. Keeton, Torts § 41, at 43-45 (5th ed. Supp. 1988) ("Even if substantial factor' seemed sufficiently intelligible as a guide in time past, however, the development of several quite distinct and conflicting meanings for the term 'substantial factor' has created a risk of confusion and misunderstanding, especially when a court, or an advocate or scholar, uses the phrase without indication of which of its conflicting meanings is intended").

of factual causation.  See Restatement (Third) § 26 comment j.
The use of the word "substantial" imposes a more demanding
standard than a traditional but-for standard.  The current model
jury instruction in Massachusetts explains that "substantial"
means that the defendant's negligence was "not an insignificant
factor" and that "it must be a material and important ingredient
in causing the harm."  Massachusetts Superior Court Civil
Practice Jury Instructions § 4.3.4(b) (Mass. Cont. Legal Educ.
3d ed. 2014).  There may be policy reasons to impose a more
rigorous standard for factual cause than but-for causation, but
that was not the primary purpose of the substantial factor test.
See Restatement (Third) § 26 comment j.[15]  Limits on liability
have also been considered to be properly addressed through the
lens of legal causation, not factual causation.  If a
defendant's conduct was necessary to bring about a harm, and the
harm would not have occurred without the defendant's conduct,

---

[15] The concurrence argues that the substantial contributing
factor standard enhances the fairness of a negligence trial.
Post at    .  We are not sure why this is true, particularly
from the injured party's perspective, if both factual and legal
causation are otherwise satisfied.  The injured party has
suffered a harm, and but for the defendant's conduct the harm
would not have occurred.  Regardless, we historically address
the equities of recovery in the legal causation, not the factual
causation, inquiry.  See Kent, 437 Mass. at 320-321.

that defendant should be treated as a factual cause of the harm.[16]

Conversely, the confusing terminology has been found to invite jurors to skip the factual causation inquiry altogether. Although terms like "substantial factor" or "substantial contributing factor" would seem to imply some level of causal connection, their employment without a but-for causation instruction in cases in which but-for causation can be established invites the jury to skip this step in the analysis and impose liability on someone whose negligence lacks the requisite causal effect.[17]  See Reporters' Note to Restatement (Third) § 26 comment j (substantial factor test "may unfairly permit proof of causation on less than a showing that the tortious conduct was a but-for cause of harm").  Absent a but-for requirement, a jury presented with negligence that is "substantial" may decide to impose liability without coming to

_____

[16] If the cause is truly trivial, it can be excluded from legal causation on that ground.  See Reporters' Note to Restatement (Third) § 26 comment j.  See also Restatement (Third) § 36.  Again, the Restatement (Third) approach is more straightforward, as it allows a jury to excuse a defendant from liability on legal causation grounds where the defendant's conduct is determined to be trivial.  See Restatement (Third) § 36.

[17] In fact, we indicated in O'Connor, 401 Mass. at 591, that in a case where a substantial contributing factor instruction is given, it would be error for the judge to instruct the jury in a way that requires it to find that the defendant was a but-for cause of the harm.

terms with whether the negligence was even a cause of the harm. As determining causation may be even more difficult where multiple causes are alleged, we need to be sure juries do not skip this step.

The use of substantial factor language also conflates and collapses the concepts of factual and legal causation. See, e.g., Strassfeld, If . . . : Counterfactuals in the Law, 60 Geo. Wash. L. Rev. 339, 355 (1992) (substantial factor approach "smuggles noncausal policy considerations, which normally are confined to the duty or proximate cause analysis, into the analysis of factual causation," and thus it "is either contentless, or it reintroduces and complicates [factual causation]"). See also Reporters' Note to Restatement (Third) § 26 comment a ("The conflation of factual cause and proximate cause by the Torts Restatements has been criticized since shortly after the first Restatement of Torts was published"). Instructing the jury to only consider "substantial factors" as causes inserts a high degree of subjectivity as to what is substantial and what is not, precisely the types of policy considerations that animate our legal causation jurisprudence. Such considerations, therefore, should not be incorporated into the factual causation analysis as well.

If the substantial factor test is employed whenever multiple causes are alleged, as the plaintiffs argue, the

potential for confusion is significant. Plaintiffs often allege multiple causes of a harm. Restatement (Third) § 26 comment i ("Frequently, plaintiffs allege that multiple tortious acts or omissions caused their harm. This is especially true in negligence actions because of the flexibility of the reasonable-care standard"). Moreover, defendants may inject further complexity by alleging that the plaintiffs, another defendant, or a nonparty caused the harm. If a substantial factor instruction is required whenever there is more than one potential cause, then the substantial factor standard could supplant the but-for standard as the primary standard for factual causation. What originated as an exception to but-for causation would swallow the rule.

Finally, using a different causation standard in multiple cause cases puts trial judges in difficult positions. Despite the apparent overlap, these are different standards. There is no simple, workable definition of "multiple causes" given that many cases will involve multiple potential causes. Using the substantial contributing factor test in this manner would mean that judges would have to decide which instruction is

appropriate before instructing the jury, a task rife with difficulty and potential error.[18]

In sum, although the substantial factor test has proved useful in two specific situations, it has not been widely adopted as the causation standard in all negligence cases and has been abandoned by the Restatement itself. See Restatement (Third) § 26 comment a.[19]

In light of the foregoing, we conclude that a but-for standard, rather than a substantial factor standard, is the appropriate standard for factual causation in negligence cases involving multiple alleged causes of the harm. We see no reason

---

[18] The concurrence disagrees with our assessment, saying instead that we are "abandon[ing] . . . our steady and successful practice of applying substantial contributing factor in torts cases involving all sorts of fact patterns." Post at . Beyond the concurrence's own appraisal of the situation, it is not clear what evidence, empirical or otherwise, there is that the use of the standard has been "steady and successful." Our review of the record here supports our concern that having two standards places trial judges in a difficult position regarding jury instructions. Indeed, when forced to decide which standard to use, the experienced and capable trial judge in this case observed, "Well . . . I know that the law has been somewhat confused in some people's eyes . . . following the Matsuyama decision."

[19] It appears that the majority of jurisdictions -- over two-thirds -- require proof of but-for causation in the majority of cases. At least one jurisdiction has replaced the "substantial factor" standard with the Restatement (Third) approach. See Thompson v. Kaczinski, 774 N.W.2d 829, 839 (Iowa 2009).

to depart from but-for causation in these cases.[20]  Thus, in the majority of negligence cases, the jury should be instructed on factual cause using a but-for standard as well as legal causation.  In this case, the judge did exactly that, making the instructions proper.

　　D.  Eliminating the substantial contributing factor test.

In addition to not extending the substantial factor test to all cases involving multiple causes, there is good reason to replace it with the standard proposed in the Restatement (Third) for

_____

[20] The concurrence minimizes the numerous extensive critiques of the substantial factor test.  To counteract all of this criticism, it relies on a passing positive reference to the standard as "useful" in dictum in Matsuyama, 452 Mass. at 30, which was focused on the utility of the standard when but-for causation cannot be established.  As we have explained today, however, but-for causation works perfectly well in most cases, including those involving multiple causes.

　　The concurrence also suggests that we are somehow simply following academic fashion in adopting the Restatement (Third). See post at     .  This statement ignores that the substantial factor test originated with the Restatement and that the case law the concurrence cites, including Matsuyama, has demonstrated great respect for the development of the law as reflected by the Restatements of Torts.  See, e.g., O'Connor, 401 Mass. at 591-592 (citing Restatement [Second] §§ 430, 431, and 433); Bernier v. Boston Edison Co., 380 Mass. 372, 386 (1980) (citing Restatement [Second] § 435); Quinby v. Boston & Me. R.R., 318 Mass. 438, 444 (1945) (citing Restatement of Torts §§ 431 and 433); Vigneault v. Dr. Hewson Dental Co., 300 Mass. 223, 229 (1937) (citing Restatement of Torts § 432).  We turn to the Restatement not because it is fashionable to do so, but because the American Law Institute has struggled greatly with the complicated question of causation in negligence cases and is constantly trying to improve the legal standard in this area, including recognizing its own errors in this regard.

multiple sufficient cause cases.[21]  If there must be an exception

to but-for causation in cases where the but-for standard fails,

we should simply recognize such an exception rather than

adopting an entirely different causation standard with confusing

terminology and unexpected difficulties.  The approach proposed

by the Restatement (Third) does exactly that.  See State v.

Tibble, 790 N.W.2d 121, 127 n.2 (Iowa 2010) (Restatement [Third]

---

[21] The issue of causation in toxic tort and asbestos cases is not before us in this case.  Therefore, we do not disturb our decision in O'Connor or the use of the substantial contributing factor instruction in those cases.  In an appropriate case, however, we may consider whether to replace the substantial contributing factor test in these cases as well.  There appears to be a variety of approaches taken in these cases, and a decision on whether to replace the substantial contributing factor test would benefit from full briefing and argument.

The concurrence misunderstands the court's hesitance to abandon the substantial contributing factor test in asbestos and other toxic tort cases.  As we have explained, because of the unique features of these cases, there may be factual and scientific limitations on a plaintiff's ability to establish the requisite causal connection between the harm and an individual defendant.  Thus, a but-for standard has seemed ill-suited for such cases.

It is simply not clear whether the concerns we have with the substantial contributing factor test justify eliminating it in these cases.  Given the volume of these cases, their great importance, and the idiosyncrasies that make them unique with regard to factual causation, it would be unwise to apply our holding to these cases as well without first having the benefit of full briefing and argument.  Our hesitance, however, should not be taken as a continuing endorsement of the substantial factor approach in toxic tort cases given the concerns we have expressed today.

§ 27 is "straightforward rule" in multiple sufficient cause cases).

Therefore, in the rare cases presenting the problem of multiple sufficient causes, the jury should receive additional instructions on factual causation.  Such instructions should begin with the illustration from the Restatement (Third) of the twin fires example so that the complicated concept can be more easily understood by the jury.[22]  After the illustration, the jury should be instructed, "A defendant whose tortious act was fully capable of causing the plaintiff's harm should not escape liability merely because of the happenstance of another sufficient cause, like the second fire, operating at the same time."  The jury should then be instructed that when "there are two or more competing causes, like the twin fires, each of which is sufficient without the other to cause the harm and each of

---

[22] That illustration is as follows:

"Rosaria and Vincenzo were independently camping in a heavily forested campground.  Each one had a campfire, and each negligently failed to ensure that the fire was extinguished upon retiring for the night.  Due to unusually dry forest conditions and a stiff wind, both campfires escaped their sites and began a forest fire.  The two fires, burning out of control, joined together and engulfed Centurion Company's hunting lodge, destroying it.  Either fire alone would have destroyed the lodge.  Each of Rosaria's and Vincenzo's negligence is a factual cause of the destruction of Centurion's hunting lodge."

Restatement (Third) § 27 comment a, illustration 1.

which is in operation at the time the plaintiff's harm occurs, the factual causation requirement is satisfied." See Restatement (Third) § 27 comment a. In such cases, where there are multiple, simultaneously operating, sufficient causes, the jury do not have to make a but-for causation finding. This approach avoids the confusing terminology presented by the terms "substantial factor" or "substantial contributing factor." It also eliminates the risk of the judge instructing the jury on the wrong standard, as this instruction supplements the but-for standard without conflicting with it.[23]

We recognize that the substantial factor test is a familiar standard in Massachusetts and that it has been used in the past, arguably with our endorsement, albeit for specific purposes.

---

[23] The concurrence reads our opinion as providing "not one standard of factual causation but many," including "basic but for," "but for plus", and "the new instruction on [multiple sufficient cause] cases." Post at    . This is incorrect. See parts 2.a.i.C and 2.a.i.D, supra ("in the majority of negligence cases, the jury should be instructed on factual cause using a but-for standard"; "in the rare cases presenting the problem of multiple sufficient causes, the jury should receive additional instructions on factual causation" [emphases added]). There is no "but-for plus"; we merely make clear what nearly every other jurisdiction recognizes -- that there is no requirement that a defendant be the sole factual cause of the harm. See Reporter's Note to Restatement (Third) § 26 comment c. With the exception of toxic tort cases, see note 21, supra, and the exceedingly rare multiple sufficient cause cases, the but-for standard will be the standard for factual causation. The other instructions we provide today merely clarify or expand on that concept in appropriate cases.

See, e.g., <u>Matsuyama</u>, 452 Mass. at 30-31.  That we have used this standard before, however, does not automatically mean that we should continue to do so.  In fact, given that the Restatements are the source of this standard,[24] the Restatement (Third)'s own recent criticism and rejection of this standard based on its confusing application provide good reason to reconsider its use.  Having thoroughly considered these standards now, we conclude that the substantial contributing factor test should no longer be used in most negligence cases.

ii.  <u>Jury instructions on standard of care and breach</u>. Next, the plaintiffs claim that the jury instructions improperly emphasized reliance on expert testimony for establishing the standard of care and breach regarding informed consent, citing to the following portions of the jury instructions as problematic:

> "In determining the -- the standard of care that applied at the time Nurse Practitioner Foster and Dr. Miller treated Laura Doull you must -- you must consider the testimony of the witnesses who offered their expert opinions on the applicable standard of care.  That is, Dr. Genecin, Dr. Hill, Dr. Kenneth Miller and Dr. Potter.  You do not decide on your own what the standard of care is or should have been, what it ought to have been.  You must decide the standard of care based on the testimony of those witnesses. And obviously, as I said earlier, if there's conflict between the -- their opinions as to what the standard of

---

[24] Early Massachusetts cases using a substantial factor standard relied on the first Restatement.  See, e.g., <u>Quinby</u>, 318 Mass. at 444; <u>Vigneault</u>, 300 Mass. at 229; <u>McKenna</u> v. <u>Andreassi</u>, 292 Mass. 213, 218 (1935).  We also relied on the Restatement (Second) in <u>O'Connor</u>, 401 Mass. at 592.

care is, your role is to determine which opinion you credit in that regard.

"You may also consider, and should also consider, any medical resources that may have been available to Dr. Miller and to Nurse Practitioner Foster during the time period that they were treating Laura Doull as one aspect of the skill and care required of them at the time. . . . You make that determination [of the standard of care] from all of the evidence introduced during the trial as well as, as I said, you must take into account the -- the testimony of the four medical experts and their testimony with regard to what the standard of care was."

The plaintiffs contend that the trial judge was required to instruct the jury that the standard of care could come from regulations, specifically 244 Code Mass. Regs. § 9.04(5) (2000),[25] and that breach could be established through an admission of fault. The plaintiffs conclude that the judge's failure to instruct on these points led the jury to find that the defendants had acquired Doull's informed consent regarding the progesterone cream. Because the plaintiffs objected, we review for prejudicial error. See <u>Blackstone</u> v. <u>Cashman</u>, 448 Mass. 255, 270 (2007). We conclude that the judge's instructions were not erroneous.

_____

[25] Title 244 Code Mass. Regs. § 9.04(5) states: "<u>Full Disclosure</u>. When proposing any diagnostic or therapeutic intervention which is beyond the scope of generic nursing practice, an [advanced practice nurse] shall fully disclose to the patient or to the patient's representative the risks and benefits of, and alternatives to, such intervention and shall document such disclosure in the patient's record."

A. <u>Standard of care</u>. "To prevail on a claim of medical malpractice, a plaintiff must establish the applicable standard of care . . . ." <u>Palandjian</u> v. <u>Foster</u>, 446 Mass. 100, 104 (2006). "In Massachusetts, 'it is entirely proper to offer in evidence . . . [an official regulation] to show the relevant standard of care.'" <u>Campbell</u> v. <u>Cape & Islands Healthcare Servs., Inc</u>., 81 Mass. App. Ct. 252, 255 (2012), quoting <u>Herson</u> v. <u>New Boston Garden Corp</u>., 40 Mass. App. Ct. 779, 793 (1996). See Mass. G. Evid. § 414 (2020) ("Safety rules, governmental regulations or ordinances, and industry standards may be offered by either party in civil cases as evidence of the appropriate care under the circumstances"). However, a judge need not instruct on a regulation if it is "not relevant to the facts of [the] case." <u>Boothby</u> v. <u>Texon, Inc</u>., 414 Mass. 468, 483, 484 (1993) ("A judge need not instruct the jury on every spin that a party can put on the facts").

Focusing on what was disputed here regarding the informed consent claims resolves the plaintiffs' issue with the adequacy of the standard of care instructions. At trial, it was undisputed that the defendants owed Doull a duty to inform her about the material risks of, and alternatives to, the

progesterone cream.[26]  The parties disputed what constituted a material risk of the treatment, with each side putting forth conflicting expert testimony on whether natural progesterone cream applied topically would increase the chances of developing blood clots.  It is unclear how further instruction on 244 Code Mass. Regs. § 9.04(5), which speaks only generally of the duty to inform, could have aided the jury in establishing the progesterone cream's material risks.[27]  To establish these, jurors would have had to look to expert testimony -- exactly what the judge instructed them to do.  Therefore, the standard of care instructions did not prejudice the plaintiffs.

     B.  <u>Breach</u>.  The plaintiffs' argument that the trial judge erroneously failed to instruct the jury that breach could be established through a defendant's admission is equally without

---

[26] In fact, the judge instructed the jury that "a medical care provider owes to his or her patient the duty to disclose, in a reasonable manner, all significant medical information that the medical care provider possesses or reasonably should possess[] that is material to an intelligent decision by the patient whether to undergo a proposed course of treatment."

[27] The plaintiffs also, somewhat obliquely, point to other policies and procedures offered in evidence as sources of the standard of care, alleging that these, too, were improperly overshadowed by expert testimony in the instruction.  Because the judge told the jurors to examine all of the evidence entered during the trial when determining the standard of care, it is unclear how the instructions were improper, let alone prejudicial.

merit.[28]  "Testimony concerning conclusory admissions by a
malpractice defendant may suffice to sustain a jury's finding of
negligence if, from the admission, the jury 'could infer an
acknowledgment of all the necessary elements of legal
liability.'"  Collins v. Baron, 392 Mass. 565, 568 (1984),
quoting Zimmerman v. Litvich, 297 Mass. 91, 94 (1937).  Indeed,
we have said that "a doctor's admission that an injury was 'his
fault' sufficed to warrant a jury's finding of negligence.  See
Collins, supra, citing Tully v. Mandell, 269 Mass. 307, 308-309
(1929).  No such admission, however, is at issue here.

During her testimony at trial, Foster admitted that she did
not inform Doull that natural progesterone cream carried any
risk of blood clotting.  Yet, this admission would not have been
sufficient to render Foster liable for failing to acquire
informed consent from Doull:  the jury would have had to find
that natural progesterone cream carried a risk of causing blood
clots in order for Foster to have committed a breach of her duty
to inform Doull about the risk.  Cf. Collins, 392 Mass. at 566
(defendant admitted that he "made a mistake during the

---

[28] The plaintiffs' argument on this point is difficult to
follow.  They claim that the "erroneous instruction also spread
to the breach portion of the case, again with overemphasis on
experts."  This is followed by discussion of Foster's admission
discussed infra.  Consequently, we interpret this argument as a
claim that the judge ought to have instructed the jury that
Foster's admissions could establish breach.

hysterectomy," had severed plaintiff's ureter, and was at fault).  Whether the progesterone cream posed such a risk was a matter that the jury would have had to turn to the experts' testimony to determine.  The jury instructions on breach, then, were proper.

b.  <u>Motion to amend</u>.  The plaintiffs contend that their motion to amend the complaint to add WIC as a defendant should have been allowed.  The judge denied the plaintiffs' motion on the grounds that the discovery deadline had passed and the plaintiffs had failed to explain why they had not added WIC earlier.

"We review the denial of a motion to amend the complaint for abuse of discretion."  <u>Dzung Duy Nguyen</u> v. <u>Massachusetts Inst. of Tech</u>., 479 Mass. 436, 461 (2018).  Despite this standard, "leave should be granted unless there are good reasons for denying the motion."  <u>Mathis</u> v. <u>Massachusetts Elec. Co</u>., 409 Mass. 256, 264 (1991).  See Mass. R. Civ. P. 15 (a), 365 Mass. 761 (1974).  "Such reasons include 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment . . . .'"  <u>Mathis</u>, <u>supra</u>, quoting <u>Castellucci</u> v. <u>United States Fid. & Guar. Co</u>., 372 Mass. 288, 290 (1977).

The plaintiffs claim to have learned in November 2016 that the defendants had ordered from WIC the progesterone cream that Foster prescribed to Doull.  The plaintiffs did not move to add WIC as a party until April 2017, approximately five months after making the discovery and four months before trial began.  At the time of their motion, the plaintiffs failed to explain the delay or address that the discovery period had expired.  Given these facts, the judge's denial of the plaintiffs' motion was not an abuse of discretion.  See Mathis, 409 Mass. at 264-265 ("an unexcused delay in seeking to amend is a valid basis for denial of a motion to amend"); Castellucci, 372 Mass. at 292 ("When trial is as imminent as it was in this case, a judge may give weight to the public interest in the efficient operation of the trial list and to the interests of other parties who are ready for trial").

c.  Posttrial contact with jurors.  The plaintiffs argue that the trial judge improperly granted the defendants' motion to require judicial approval for postverdict contact with the jurors.  Considering the reasons for the plaintiffs' request to initiate contact with the jurors, the judge's decision was proper.

Attorneys are generally not required to seek court approval before initiating postverdict contact with the jury.  See Commonwealth v. Moore, 474 Mass. 541, 551 (2016).  An attorney

may not, however, initiate postverdict contact with the jury if "the communication is prohibited by law or court order" (emphasis added). Mass. R. Prof. C. 3.5 (c) (1), as appearing in 471 Mass. 1428 (2015). See Moore, supra at 549 n.10 ("We do not question that, when appropriate, a judge in a particular case may restrict or even prohibit attorneys' unsupervised communication with jurors postverdict; such a court order is expressly contemplated by rule 3.5 [c] [1]"). A judge may bar postverdict contact with the jury if the attorney seeks to inquire "into the contents of jury deliberations and thought processes of jurors." Id. at 548.

In response to the defendants' motion to require judicial approval for postverdict contact with the jurors, the plaintiffs explained that they sought to contact the jurors in order to ask them "how they felt about [Miller's trial counsel] nearly assaulting Dr. Genecin . . . on the witness stand and if they would have felt differently if the attorney was male and witness was female."[29] These objectives fall far afield of anything resembling a valid reason for approaching jurors and instead appear to be aimed at "inquiry into the contents of jury deliberations and thought processes of jurors and the

---

[29] In granting the defendants' motion, the trial judge noted that no assault occurred and that the plaintiffs' suggestion otherwise could distort the jurors' understanding of the advocacy process.

impeachment of jury verdicts based on information that might be gained from such inquiry." See <u>Moore</u>, 474 Mass. at 548. For these reasons, the trial judge's concerns that the plaintiffs would pry into the jurors' deliberations were warranted and the prohibition on postverdict contact with the jury was appropriate.

d. <u>Additional claims</u>. Finally, the plaintiffs make a litany of arguments that cite few or no legal authorities, contain cursory or no argumentation, or are unsubstantiated in the record or reference no portions of the record at all.[30]

---

[30] The plaintiffs contend, for example, that if the trial judge had admitted every publication they offered in evidence, then "a different result on the informed consent questions would have been likely." For this conclusion, the plaintiffs cite once to <u>Pfeiffer</u> v. <u>Salas</u>, 360 Mass. 93, 99 (1971), but provide no discussion of it. We further discern no abuse of discretion in the trial judge's limitations on the use and reference to certain drugs containing progesterone that were not demonstrated to be the same as or sufficiently similar to the topical progesterone cream used by Doull. Next, the plaintiffs make at least nine different versions of the argument that the judge systematically abused her discretion and deprived them of a fair and balanced trial. For each iteration of this claim, the plaintiffs fail to explain how the judge abused her discretion or how it prejudiced them, resorting instead to vague declarations that they were denied a fair trial. The plaintiffs then turn to the judge's denial of their motion for judgment notwithstanding the verdict on the defendants' affirmative defenses. For this claim, the plaintiffs make no argument on appeal at all, instead directing our attention to arguments they made below. Finally, the plaintiffs argue that the judge abused her discretion in various ways during the pretrial and discovery processes. Again, these claims are made with scant argument. More is required from appellate advocates.

These claims do not rise to the level of appellate argument.[31]

See Mass. R. A. P. 16 (a) (9), as amended, 428 Mass. 1603

(1999). We therefore do not consider them.[32]

    3. <u>Conclusion</u>. For the foregoing reasons, we affirm the

judgment and the order denying the plaintiffs' motion for a new

trial.

<u>So ordered</u>.

---

[31] Because the plaintiffs' appeal raised nonfrivolous issues, we reject the defendants' call to award appellate attorney's fees and double costs. See <u>Masterpiece Kitchen & Bath, Inc</u>. v. <u>Gordon</u>, 425 Mass. 325, 330 n.11 (1997) ("The determination whether an appeal is frivolous is left to the sound discretion of the appellate court . . ."). See also <u>Avery</u> v. <u>Steele</u>, 414 Mass. 450, 455 (1993), quoting <u>Allen</u> v. <u>Batchelder</u>, 17 Mass. App. Ct. 453, 458 (1984) ("An appeal is frivolous '[w]hen the law is well settled, when there can be no reasonable expectation of a reversal'").

[32] We cannot, however, pass over in silence the many references made in the plaintiffs' brief to the trial judge's supposed biases. At various points, the plaintiffs' counsel insinuates or outright alleges that the trial judge was biased toward the defendants. Indeed, the plaintiffs' brief concludes by noting of the causation issue: "The simple truth is the Trial Court gave the wrong instruction of law in order to guarantee a defense verdict." We have reviewed the transcript, and the judge exhibited patience, rectitude, and fairness throughout the trial. The record supports none of the accusations found in the plaintiffs' briefs.

LOWY, J. (concurring, with whom Gaziano, J., joins).  Today the court abandons decades of precedent in an attempt to clarify confusion that does not exist.  Abandoning the substantial contributing factor instruction in circumstances where there is more than one legal cause of an injury will, in my view, inure to the detriment of plaintiffs with legitimate causes of action while not clarifying the existing law of causation.  To be clear, I agree that regardless of the test, the outcome in this case is the same.  Here, the jury found only one breach on which to consider causation; this is the paradigmatic situation for but-for causation.[1]  Yet for the following reasons, I would maintain the current practice of applying the substantial contributing factor test to multiple cause cases.

1.  Current law.  We have long applied the substantial contributing factor test.  See, e.g., Bernier v. Boston Edison Co., 380 Mass. 372, 386 (1980); Tritsch v. Boston Edison Co.,

---

[1] At trial, plaintiffs argued three theories of negligence: (1) that Anna C. Foster and Richard J. Miller failed to acquire informed consent from Laura Doull, (2) that Foster failed to diagnose Doull properly during her spring 2011 visits, and (3) that Miller was negligent in his supervision of Foster.  The jury eliminated informed consent as a possible theory, thus leaving only the failure to diagnose and the negligent supervision claims.  These two theories of negligence shared only one cause, because finding liability on the negligent supervision claim hinged on the failure to diagnose claim.  Thus, although the judge should have initially instructed on the substantial contributing factor test, failure to do so was harmless.

363 Mass. 179, 182 (1973); Falvey v. Hamelburg, 347 Mass. 430, 435 (1964); Quinby v. Boston & Me. R.R., 318 Mass. 438, 444-445 (1945); Vigneault v. Dr. Hewson Dental Co., 300 Mass. 223, 229 (1938). References in our cases to causes being "substantial contributing" factors even predate the test's modern formulation in the Restatement of Torts (1939) and Restatement (Second) of Torts (1965). See Wheeler v. Worcester, 10 Allen 591, 594, 597 (1865). In recent years, we have refined how the test is applied to cause-in-fact problems. See Matsuyama v. Birnbaum, 452 Mass. 1, 30-31 (2008) (limiting substantial contributing factor test to cases with multiple causes). Examination of the test reveals why it has so long endured.

To begin, note how the substantial contributing factor test mirrors the analysis of but-for causation. Save for the rare instances where two or more causes are each alone sufficient to produce a result, we have made clear that a substantial contributing factor must actually make a difference as to whether an event occurs in order to be considered a cause of it. In O'Connor v. Raymark Indus., Inc., 401 Mass. 586, 592 (1988), for example, we held that a jury must "distinguish between a 'substantial factor,' tending along with other factors to produce the plaintiff's [harm], and a negligible factor, so slight or so tangential to the harm caused that, even when combined with other factors, it could not reasonably be said to

have contributed to the result."  If the plaintiff cannot demonstrate that the defendant's negligence substantially contributed to the alleged harm, then the defendant cannot be held liable.  See id. at 587.  Just as but-for causation does, the substantial contributing factor test embodies a core principle of tort law:  only those who meaningfully contributed to a person's harm should be liable for it.[2]  See Wainwright v. Jackson, 291 Mass. 100, 102 (1935).

_____

[2] Semantics further proves the point.  A substantial contributing factor must first and foremost be a genuine factor. It would be difficult to contemplate how conduct could "substantially" contribute to an outcome and yet the outcome would have happened without the conduct.  See Black's Law Dictionary 1728 (11th ed. 2019) (defining "substantial" as "1. Of, relating to, or involving substance; material . . . . 2. Real and not imaginary; having actual, not fictitious, existence . . . . 3.  Important, essential, and material; of real worth and importance").

Other courts have echoed this sentiment.  See, e.g., June v. Union Carbide Corp., 577 F.3d 1234, 1239 (10th Cir. 2009) ("the ultimate legal standards in the two Restatements," one of which advocates substantial contributing factor and other of which advocates but-for cause, "are essentially identical"); Mitchell v. Gonzales, 54 Cal. 3d 1041, 1052 (1991) ("the 'substantial factor' test subsumes the 'but for' test"); Burnette v. Eubanks, 308 Kan. 838, 850-851 (2018) ("An act of negligence which contributes to an accident must, of necessity, have at least a part in causing the accident" [citation omitted]).  Hence, even critics of the substantial contributing factor test concede that it works fine when clearly delineated: the test implicitly subsumes within it the same requirements of but-for cause.  See Robertson, The Common Sense of Cause in Fact, 75 Tex. L. Rev. 1765, 1781 (1997) ("As long as courts are careful to explain that they are not adding a sixth requirement -- but instead are either using the 'substantial factor' test for cause in fact in lieu of the but-for approach or are using

Where the two tests part ways is in where they focus jurors' attention. The substantial contributing factor test is positive in outlook: it frames causation to have a juror start by considering what actually happened, and whether the defendant's actions played a part in producing the result. See Restatement (Second) of Torts § 431(a). But-for causation, on the other hand, begins not with what was, but with what might have been: in order to determine whether what occurred was the product of the defendant's action, the jury must determine how the sequence of events would have played out in the absence of this conduct. See Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 26 comment e (2010) (Restatement [Third] of Torts).

Although this counterfactual framing may be straightforward when the jury are considering only one theory of causation, I fear that in cases with multiple causes it invites the jury to get caught up in speculative combinations of "what if" and "if only." See, e.g., Green, The Causal Relation Issue in Negligence Law, 60 Mich. L. Rev. 543, 556 (1962) ("Tests of this character have the same vice as any 'if,' or any analogy. They take the eye off the ball"). See also Spellman & Kincannon, The Relation Between Counterfactual ("But For") and Causal

---

the 'substantial factor' vocabulary to describe a general approach to the legal cause issue -- no clear harm is done").

Reasoning: Experimental Findings and Implications for Jurors' Decisions, 64 Law & Contemp. Probs. 241, 243-247 (2001) (detailing how moral and other nonfactual factors enter into jurors' considerations when engaged in counterfactual reasoning). The substantial contributing factor test better replicates how many people understand causation and thus avoids this issue.

These considerations reveal not only why we recently said that the substantial contributing cause test was "useful" in cases with multiple causes, but also how the test promotes fairness. Matsuyama, 452 Mass. at 30. As with the other elements of a negligence claim, plaintiffs bear the burden of proving causation. See Glidden v. Maglio, 430 Mass. 694, 696 (2000). In the sorts of byzantine fact patterns that often arise in medical malpractice, toxic tort, and other tort cases with multiple causes, an instruction on but-for causation provides defendants with tools unavailable to plaintiffs. For example, civil defendants in cases with multiple causes sometimes "employ an 'empty chair' defense -- blaming the party not on trial." Lind v. Domino's Pizza LLC, 87 Mass. App. Ct. 650, 665 (2015). This strategy is but one example of how but-for causation encourages jurors to speculate about alternative realities. An instruction on the substantial contributing factor test, however, focuses the jurors attention directly on

what ought to determine legal responsibility:  the conduct of the parties.

 2.  <u>The court's approach</u>.  The court abandons what has been our steady and successful practice of applying the substantial contributing factor test in torts cases involving all sorts of fact patterns, not just in "twin fire" and toxic tort cases. See, e.g., <u>Renzi</u> v. <u>Paredes</u>, 452 Mass. 38, 44 n.10 (2008) (substantial contributing factor test proper in loss of chance case where liability was premised on failure to diagnose); <u>Morea</u> v. <u>Cosco, Inc</u>., 422 Mass. 601, 603 n.2 (1996) (jury found defective product design not "substantial cause" of child's death); <u>Michnik-Zilberman</u> v. <u>Gordon's Liquor, Inc</u>., 390 Mass. 6, 14 (1983) (jury could find liquor store's sale of alcohol to minor was "substantial legal factor" causing cyclist's death); <u>Mullins</u> v. <u>Pine Manor College</u>, 389 Mass. 47, 58, 62 (1983) (jury could find that injury to rape victim was substantially caused by college's negligent security).

 Why the sudden about-face?  Precedent does not dictate the new direction, as recent affirmations of the substantial contributing factor test attest.  See, e.g., <u>Renzi</u>, 452 Mass. at 44 n.10.  Practices, too, remain unaltered.  See, e.g., <u>Parsons</u> v. <u>Ameri</u>, 97 Mass. App. Ct. 96, 102 (2020) (jury instructed on substantial contributing factor test in medical malpractice case).  Indeed, even the current Massachusetts Continuing Legal

Education Civil Practice Jury Instructions recognize our use of the substantial contributing factor test in cases with multiple causes. See Massachusetts Superior Court Civil Practice Jury Instructions § 4.3.4(a) practice note (3d ed. 2014) (but-for test is "suitable for use in the ordinary tort case without the complexity of multiple causes or tortfeasors").

Only one thing has changed: the Restatements. Whereas earlier Restatements embraced the substantial contributing factor test, the Restatement (Third) of Torts has rejected it. Compare Restatement of Torts § 431(a) and Restatement (Second) of Torts § 431(a), with Restatement (Third) of Torts § 26. Specifically, the Restatement (Third) calls the substantial contributing factor test "confusing," concluding that, aside from multiple sufficient cause cases, the test "provides nothing of use in determining whether factual cause exists." Restatement (Third) of Torts § 26 comment j. This position is now the court's. What we very recently called "useful" is now supposedly no longer so. See Matsuyama, 452 Mass. at 30.

Of course, we are not bound to follow old law when new facts reveal that application is unworkable in our jurisdiction. See Franklin v. Albert, 381 Mass. 611, 617 (1980). Yet such facts are absent here. Notably, when the court discusses the confusion that the substantial contributing factor test has

allegedly generated, citations to our cases drop off.[3]  Instead, the court replicates an abstract and academic discussion of the problems that the Restatement (Third) of Torts found with the standard.[4]  See ante at    -    .  We should be "disinclined to fix something that is not broken, even if [we] would have constructed it differently in the first place."[5]  Stonehill College v. Massachusetts Comm'n Against Discrimination, 441 Mass. 549, 589 (Sosman, J., concurring), cert. denied sub nom. Wilfert Bros. Realty Co. v. Massachusetts Comm'n Against Discrimination, 543 U.S. 979 (2004).

Furthermore, how much of the apparent confusion the court's solution would dispel is unclear.  Although the court criticizes the substantial contributing factor test for requiring judges to

---

[3] One of the court's citations to our cases is also inaccurate.  Matsuyama, 452 Mass. at 30, is a loss of chance medical malpractice case; it is neither a toxic tort nor an asbestos case, although the court lumps it in with those cases.

[4] By way of explanation, the Restatement (Third) of Torts catalogues various uses of the test across different jurisdictions.  The test appears to be more confusing when comparing cases across jurisdictions -- which unsurprisingly evince the sort of pluralism characteristic of the common law's development -- than when comparing cases within a jurisdiction.  Regardless, absent from these comparisons is Massachusetts.  See Restatement (Third) of Torts § 26 comment j.

[5] Other States have also successfully continued to apply the substantial contributing factor test in recent years despite the alternative presented by the Restatement (Third) of Torts.  See, e.g., O'Grady v. State, 140 Haw. 36, 46 (2017) (reaffirming use of test in negligence cases).

determine how many causes are alleged in a case, the court provides not one standard of factual causation but many. First, there is basic but-for: as is currently the practice, in cases where there is one alleged cause, jurors should be instructed on but-for causation. See <u>ante</u> at  - . Second, there is but-for plus: in cases where there are more than one alleged cause, it is "appropriate" to also inform the jurors that there can be more than one but-for cause of a harm.[6] See <u>id</u>. at note 12. Third, there is the new instruction on the twin fires example: in cases where there are multiple sufficient causes, jurors are to be given a hypothetical scenario detailing a camping trip gone wrong, told that "[a] defendant whose tortious act was fully capable of causing the plaintiff's harm should not escape liability merely because of the happenstance of another sufficient cause, like the second fire, operating at the same time" along with a follow-up explanation of this instruction, and then sent to deliberate. See <u>id</u>. at  . Fourth, and finally, the substantial contributing factor test remains: for all its purported confusion, the standard continues to work well in toxic tort cases -- except for the fact that the court also

---

[6] Even but-for plus presents an option within an option, as the court implies by noting that it is merely "appropriate," not necessary, for the trial judge to so instruct the jury in cases where there are multiple alleged causes.

invites in a footnote overturning what it otherwise praises.[7]
See id. at note 21.

The Restatements are owed respect. Our cases, however, deserve more. See Mabardy v. McHugh, 202 Mass. 148, 152 (1909) ("Parties should not be encouraged to seek re-examination of determined principles and speculate on a fluctuation of the law with every change in the expounders of it"). The number of tests the court provides is a tacit recognition of what our cases have long understood: the but-for standard is useful, but limited in its usefulness. Given that our cases have had decades to refine this point, following them is the prudent course.

_____

[7] Additionally, adopting a new approach to cause-in-fact issues in torts will encourage litigants to press for its application in other areas of the law beyond negligence, such as commercial disparagement, defamation, and false representation. See, e.g., HipSaver, Inc. v. Kiel, 464 Mass. 517, 537 (2013), quoting Restatement (Second) of Torts § 633 comment g ("[w]hen the loss of a specific sale is relied on to establish pecuniary loss, it must be proved that the publication was a substantial factor influencing the specific, identified purchaser in his decision not to buy"); Murphy v. Boston Herald, Inc., 449 Mass. 42, 67 (2007) ("The judge properly instructed the jury: 'The pain and suffering for which [the plaintiff] is entitled to recover in this action is the pain and suffering which the defamatory statement was, or were, a substantial factor in producing'" [alteration in original]); Reisman v. KPMG Peat Marwick LLP, 57 Mass. App. Ct. 100, 112 (2003) ("It has long been the law in Massachusetts that, where reliance on a fraudulent misstatement is a substantial factor in the decision to purchase and/or retain stock, the maker of a false representation is liable for a subsequent loss in the value of stock suffered in reliance on the false representation").

3. <u>Conclusion</u>. With so many pages of the Massachusetts Reports already filled with the successful application of the substantial contributing factor test, the court's conclusion that the test is now unworkable defies experience and unravels precedent. I fear that it does so at the price of fairness.